Robert Thomas THORN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–95–00865–CR.

Court of Appeals of Texas,
Dallas.

Nov. 27, 1996.

Discretionary Review Refused
April 23, 1997.

T. Scott Smith, T. Scott Smith, P.C., Sherman, for Appellant.

Bobbie J. Peterson, Asst. County. Atty., Robert Dist. & County Atty., Sherman, for Appellee.

Before LAGARDE, WRIGHT and WOLFE, JJ.

## OPINION

WOLFE, Justice.

Robert Thomas Thorn appeals his conviction for perjury. The trial court assessed punishment at a fine of $1000 and restitution of $1200. In four points of error, appellant (1) challenges the sufficiency of the evidence to support his conviction; (2) asserts that the statute under which he was convicted is void for vagueness; (3) argues that documents not produced in response to a discovery request were erroneously admitted into evidence; and

(4) complains that the trial court erroneously admitted evidence of appellant's thirteen prior felony convictions. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Shortly before 5:00 p.m. on March 23, 1994, appellant went to the office of the City Clerk of the City of Denison, Texas, carrying with him an application for a place on the ballot for the City of Denison's general election to be held on May 7, 1994. The deadline for filing applications was 5:00 p.m. on March 23. In his application, appellant stated that he was seeking the office of mayor of Denison. The application included an affidavit required to be signed by the applicant in the presence of an officer authorized to administer an oath. When appellant arrived at the City Clerk's office, he had already signed

the affidavit but had not done so in the presence of an officer authorized to administer an oath, and he had not taken any oath verifying the information set forth in the affidavit. At the City Clerk's office, appellant gave his application to Nina Jones, a deputy clerk, who saw that the affidavit had not been properly signed and sworn to. Jones testified that it is not unusual for incomplete applications to be presented by persons wishing to apply for a place on a ballot. She advised appellant that the affidavit had to be signed and sworn to in the presence of a notary.

Jones testified that before administering the oath to appellant, she read the affidavit to him. The affidavit contained the following language:

[N]or have I been finally convicted of a felony for which I have not been pardoned or had my full rights of citizenship restored by other official action.

When Jones read that part of the affidavit to appellant, he stopped her and, according to Jones's testimony, said "I cannot swear to that." The City Clerk and chief elections officer for the city, Barbara Forrest, testified that she overheard Jones reading the affidavit to appellant who stopped her and said "that he had been convicted of a felony, but that he had contacted the secretary of state of Texas and the attorney general and that *they had assured him that he could run for office in the State of Texas.*" (Emphasis added.)

It is undisputed that appellant was convicted of thirteen felony offenses in Texas in 1959 and that he had not been pardoned. Appellant testified that he was confused as to whether or not his full rights of citizenship might somehow have been restored, but there was no evidence verifying that any such restoration had ever occurred, whether by some "official action" other than a pardon, or otherwise.

Forrest testified that following the truncated conversation between Jones and appellant, appellant came into Forrest's office and told her that he had spoken with the secretary of state and Dan Morales, "who is the attorney general," and they had told him he could run for office. Forrest testified that even though appellant stated that he had been convicted of a felony, he also stated that he had been told by authorities that he could run for office. She testified that she "felt confident that he knew what he was saying, that this was his affidavit that he wished to make, and on that basis, [I] had no authority but to accept the affidavit as he gave it." She also testified that she could not refuse to accept his application until receipt of an official document confirming his ineligibility. Forrest told Jones to go ahead and notarize the affidavit as requested by appellant.

Forrest agreed that appellant might have said the name "Dan Lee" rather than "Dan Morales," but she positively testified that appellant invoked the authority of the "secretary of state" during his visit to the clerk's office. She stated that appellant never said anything to her or questioned her about having his rights restored by some means other than a pardon.

Appellant testified that he knew that he had never been pardoned and expected this to become a "campaign issue" during his mayoral candidacy. Various persons had encouraged him to run for mayor, but he did not consider himself to be a serious candidate: he was planning to withdraw his candidacy after bringing up some issues and was planning to throw his support behind another candidate.

He further testified that upon first entering Jones's office on March 23, 1994, he read the affidavit, noted the language in question, and told Jones that he could not sign the affidavit because he had "not been pardoned in the State of Texas." Appellant told Jones that even though he "had been approved by the Board of Pardons and Paroles on three different occasions, . . . no governor had signed a pardon though he did have a pardon from the State of Arkansas." Appellant testified that no one had ever told him that he could run for office in the State of Texas or that there was some means other than a pardon by which he could have his rights restored; he told the jury he "thought perhaps that there could have been some laws that after a period of time, your right to hold office was restored." When appellant gave

Jones the information that he had not been pardoned in the State of Texas even though a pardon had been approved by the Board and that he had been pardoned in Arkansas, Jones "seemed to be confused." At this point, Forrest intervened and asked to see the application.

Appellant testified that he informed Forrest that he had talked to his friend, Dan Lee, a presiding justice on the Supreme Court of Mississippi, who had told him that "some states allowed you to run for public office after so many years." He assumed that if he was not eligible to run for office, Forrest would stop him. When Forrest "approved [his] filing of the application" this meant to him "that there was some other official action that a state can take, because Marion Berry [sic] just got out of prison for a felony conviction," and "there's been many felons file [sic] for public office in the State of Texas even."

Appellant denied ever saying anything to Jones or Forrest about the secretary of state of Texas or Dan Morales; he claimed to have told them only that he had talked with Dan Lee. Appellant testified that after he made his affidavit he "later called Dan Lee and he [Lee] said you should have had them strike that part up at the top. I said, well, I done signed it."

Justice Lee testified that many years ago he had represented appellant in a criminal case in Mississippi, that he had taken a personal interest in appellant, and that they had become and remained good friends. Prior to March 23, 1994, appellant asked him what he thought about appellant's running for mayor, and the justice reminded him that "you've got to realize now you've been convicted." Appellant responded that his convictions occurred "twenty-odd years ago." Justice Lee commented that the convictions were "in the past," "behind" appellant, and encouraged him to run for mayor. The justice told appellant that in Mississippi a convicted felon does not lose his *right to vote* unless the judge expressly so orders and that appellant should determine the status of his Texas voting rights. On July 21, 1994, Justice Lee wrote a letter to appellant stating that "*voting rights* are sometimes automatically re-

stored in some states" and congratulating him on running for mayor. (Emphasis added.)

Justice Lee further testified that during one conversation with appellant, appellant asked him if "his rights had been restored by some … means" other than a pardon, and the justice told him "the way he could be restored in Mississippi and it might could well been done [sic] in Texas as well." The justice advised appellant "that he had to be qualified an elector" [sic]. This discussion pertained to *voting rights*, not the right to run for office. The justice's principal advice in regard to appellant's running for office was "that he do whatever is necessary to qualify."

The justice testified that he is not familiar with the election laws and voter registration laws of the State of Texas. He had no discussion with appellant as to "ways that his rights could be restored by some other means than a pardon."

Appellant testified that he was confused by the language in the affidavit "because there was maybe some other official action that a state can take." Relying on Forrest's "official status" as the City's chief elections officer, he expected her to guide him and stop him from making the affidavit if he were ineligible to run for office; instead, Forrest advised Jones that "we have to accept his application." He signed and swore to the statements in the affidavit in the presence of Jones, who signed as the officer administering the oath, affixed her notarial seal, and received the application. He testified that he believed the statements in his affidavit were true and that he did not intend to deceive anybody.

The day after appellant's application was received, Forrest called the secretary of state's office "and received clearance to approve the application and the affidavit." Thereafter Forrest received verified information, dated April 7, 1994, from the Pardons and Paroles Division of the Texas Department of Criminal Justice, that appellant had never received a full pardon from the State of Texas. She then notified appellant by letter dated April 8, 1994, that he was invited

to provide the City with information in support of his sworn statement by noon on April 13 or a Declaration of Ineligibility would be issued. Appellant did not respond to that letter, and by a document dated April 13, headed "Administrative Declaration of Ineligibility for a Place on the Ballot," the City advised appellant that he was ineligible because he had been convicted of a felony for which he had not been pardoned "or been released from disabilities by other official action."

John Mullaney, an employee of the Texas Department of Criminal Justice, testified that on April 11, 1994, he was supervisor of the executive clemency section of the Board of Pardons and Paroles. On that date, nineteen days after appellant filed his application to run for mayor, appellant unexpectedly appeared in Mullaney's office in Austin to seek expedited action on an application for a pardon which he had filed in December 1993, and to review his file. Appellant told Mullaney that he needed to get his pardon expedited because he had gotten himself on the ballot in Denison to run for mayor.

Appellant testified that his visit to Mullaney was precipitated by his receipt of the letter from the City of Denison dated April 8, inviting him to provide the City with information in support of his sworn statement. Appellant stated that he was surprised by this letter "because I didn't intend to run in the first place." He denied telling Mullaney that he had gotten himself "in some kind of fix on the ballot" or even that he was on the mayoral ballot in Denison. His testimony concerning his meeting with Mullaney was corroborated by the testimony of his wife, Ethel Thorn.

Mullaney testified that the statement that "[I have not] had my full rights of citizenship restored by ... official action" other than a pardon was confusing to him, because he was unaware of any action that can be taken, other than a pardon, to restore full rights of citizenship to a felon. Other witnesses, including Tom Akins, City Attorney of the City of Denison, also testified that they were unsure of the meaning of the phrase "other official action."

Appellant was charged by indictment with the offense of perjury, a Class A misdemeanor, for making under oath a false statement that he had not been finally convicted of a felony for which he had not been pardoned or had his full rights of citizenship restored by other official action and that he made the false statement with knowledge of its meaning and with the intent to deceive.

## SUFFICIENCY OF THE EVIDENCE

In point of error one, appellant contends that the evidence is legally and factually insufficient to prove that appellant intended to deceive by signing the application. Appellant contends that the evidence does not show that he had the intent to deceive or knowledge of the meaning of the language in the application concerning "other official action" that could restore his rights of citizenship.

### Standard of Review

In determining the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). When conducting a legal sufficiency review, we consider all evidence admitted, whether proper or improper. *Garcia v. State,* 919 S.W.2d 370, 378 (Tex.Crim. App.1994); *Chambers v. State,* 805 S.W.2d 459, 460 (Tex.Crim.App.1991). Every fact need not point directly and independently to the defendant's guilt. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Id.; Smith v. State,* 895 S.W.2d 449, 452 (Tex.App.— Dallas 1995, pet. ref'd).

The jury is the sole judge of the credibility of the witnesses and the weight given their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153

(1985). The trier of fact can accept or reject any or all of a witness's testimony. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim. App.1974). Our purpose is not to reevaluate the weight and credibility of the evidence; we act as a final due process safeguard to ensure that the jury reached a rational decision. *See Moreno*, 755 S.W.2d at 867.

■ In reviewing challenges to the factual sufficiency of the evidence, we view all of the evidence without the prism of "in the light most favorable to the prosecution." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We consider all of the evidence equally, including testimony of the defense witnesses and the existence of alternative hypotheses. *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). In conducting this review, we must be appropriately deferential to the fact finder's determination. *Clewis*, 922 S.W.2d at 133. We may not "find" facts or substitute our judgment for that of the fact finder. *Id.* at 135. We review the fact finder's weighing of the evidence and are authorized to disagree with the fact finder's determination. *Id.* at 133. It is not enough that we believe a different result is more reasonable. *Id.* at 135. We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

### Applicable Law

■ Section 37.02 of the Texas Penal Code describes the elements of a perjury offense: "A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath...." TEX. PENAL CODE ANN. § 37.02 (Vernon 1994). In a perjury prosecution, the State need not allege or prove that an accused knew the statement to be false when he made it. *Butler v. State*, 429 S.W.2d 497, 502 (Tex.Crim.App.1968); *Tanner v. State*, 681 S.W.2d 626, 628 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). A witness may commit perjury if he swears to a matter about which he consciously has no knowledge. *Butler*, 429 S.W.2d at 502. The effect of such testimony is that the witness declares that he knows the truth of what he states, and, if he is conscious he does not know it, he means to swear falsely. *Id.* It has long been within the province of the jury to determine for themselves whether they believe a particular witness in a perjury trial. *Tanner*, 681 S.W.2d at 628. Under section 37.02, if a jury believes that a perjury defendant thought his statement was *true*, they would be unable to find that he "intended to deceive," and acquittal would be required. *See Covalt v. State*, 877 S.W.2d 445, 449 (Tex.App.—Houston [1st Dist.] 1994, no pet.). However, when the defendant is "confused," no acquittal is required.

■ Appellant relies on *Gauthier v. State*, 496 S.W.2d 584, 585 (Tex.Crim.App.1973), for the proposition that "a statement made through inadvertence [sic] or under agitation or by mistake, is not perjury." At trial, appellant elicited testimony from several officials who could not explain what was meant by the following phrase on the application: "or had my full rights of citizenship restored by *other official action.*" (Emphasis added.) In his brief, appellant argues that the confusion surrounding this phrase supports his contention that he too was confused and mistaken when he swore that his full rights of citizenship had been restored by means of some "official action" other than a pardon. Appellant further argues that his confusion is a defense to the perjury charge.

We find appellant's argument unpersuasive. In *Gauthier*, the defendant believed his statements were true, and his confusion centered on the nature of the questions posed to him. *Id.* Further, *Gauthier* was decided under the prior perjury statute which required the State to prove only that (1) the statement was false and (2) the defendant deliberately and wilfully made the statement. *Covalt*, 877 S.W.2d at 449. When a defendant asserted, as an affirmative defense, that he believed the statement was true at the time it was made, the prior statute made it necessary to instruct the jury that a defendant's belief that he was telling the truth was a defense to the perjury charge. *See Gauthier*, 496 S.W.2d at 587; *Covalt*, 877 S.W.2d at 449.

Under the present statute, however, if a jury believes that a defendant thought his

statement was true when he made it, the jury would necessarily be unable to find that he "intended to deceive." *Covalt*, 877 S.W.2d at 449. Therefore, the jury would be required to acquit without the kind of affirmative defense charge required under the prior statute. *Id.* The language that appellant quotes from *Gauthier* is taken from the jury charge given at trial in that case and is not part of *Gauthier*'s holding. This language was merely part of the charge appropriate under the prior statute.

In the instant case, if there had been "official action," it would have been easily recognizable in the form of a document or some other overt manifestation of an "official" restoration of appellant's rights of citizenship. It was not necessary for appellant to know what might have been done in order to recognize official action when it did occur. Here, there was no official action; therefore, appellant had to know that his rights of citizenship had not been restored. His confusion regarding how he might go about *having* his citizenship restored does not amount to knowing it *was* restored. If appellant did not know whether his rights had been restored by some "official action" other than a pardon, he committed perjury by swearing that such restoration had in fact occurred. *See Butler*, 429 S.W.2d at 502.

When viewed in the light most favorable to the verdict, the evidence shows that appellant knew he had not been pardoned and that no other "official action" had restored his rights of citizenship. He waited until only a few minutes before the application deadline before presenting his unsworn application. Appellant then made an obscure reference that a figure of authority, possibly the secretary of state of Texas, the attorney general of Texas, and/or a presiding justice of the Supreme Court of Mississippi had told him that he could run for office.

The jury could well have given considerable weight to the evidence that after receiving the City's April 8 letter, appellant made a quick trip to Austin to try to get his pending pardon application expedited. At a minimum, appellant's action indicates an awareness on his part that he was badly in need of a pardon in order to respond to the city's

request for evidence in support of his sworn statement. There is no evidence that appellant answered the City's letter of April 8.

Appellant swore that his full citizenship rights had been restored by pardon or "other official action." Based on appellant's conduct, we conclude a rational jury could have found beyond a reasonable doubt that appellant made a false statement under oath with intent to deceive and with knowledge of the statement's meaning.

As required by *Clewis*, we have viewed all of the evidence without the prism of "in the light most favorable to the prosecution." *Clewis*, 922 S.W.2d at 126. We conclude it is factually sufficient to affirmatively establish that appellant committed perjury. We further conclude that the jury's finding that appellant committed perjury is not so against the overwhelming weight of the evidence as to be clearly wrong or unjust. We overrule appellant's point of error one.

### Unconstitutionally Vague

In appellant's second point of error, he asserts that section 37.01 of the Texas Penal Code is unconstitutionally vague as it applies to him. However, in his brief appellant discusses the constitutionality of section 37.02 which sets forth the offense of perjury. Appellant's argument appears to be that the phrase "other official action" contained in the *application* was too vague to form the basis of a perjury conviction. When determining whether a state statute is constitutional on vagueness grounds, where no constitutionally protected right is concerned, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's conduct. *Cain v. State*, 855 S.W.2d 714, 718 (Tex.Crim. App.1993). Even extending this inquiry to sections 37.01 and 37.02 of the Texas Penal Code and the provisions in the application at issue, we do not find that any of the language therein is so vague that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). A statute is not unconstitutionally vague merely because the words or terms

used are not specifically defined. *Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App. 1989). Clearly, the evidence supported the finding that appellant knew there had been *no* official action which would restore his full rights of citizenship. The fact that "other official action" was not defined does not render unconstitutional appellant's conviction based upon this language. Appellant's point of error two is overruled.

### Admission of Prior Applications

 In his third point of error, appellant asserts the trial court erred in admitting into evidence two of appellant's prior applications for pardon and the verifying affidavit of William Brooks, custodian of official records for the paroles division of the Texas Department of Criminal Justice. Appellant complains that these documents were not produced in response to a specific discovery order and are therefore inadmissible.

It is true that when a trial court grants a motion for discovery and the prosecution fails to disclose the evidence ordered disclosed, the evidence is ordinarily inadmissible. *Lindley v. State,* 635 S.W.2d 541, 543 (Tex.Crim.App.1982). However, this rule applies to evidence in the possession of the prosecution. In this case, the documents were in the custody of the paroles division, not the prosecution, and both the prosecution and the defense saw the documents for the first time at trial.

We have previously held that it is not error for a trial court to admit evidence that was not exculpatory or impeachment evidence, even though the prosecution failed to produce it. *Farrell v. State,* 837 S.W.2d 395, 399–400 (Tex.App.—Dallas 1992), *aff'd,* 864 S.W.2d 501 (Tex.Crim.App.1993). Like the evidence admitted in *Farrell,* the evidence in this case was inculpatory, and it was not error to admit it. Further, appellant opened the door for the admission of his pardon applications when he advised the jury panel on voir dire that he was "recommended for pardon several times by the Texas Board of Pardons and Paroles." We overrule appellant's point of error three.

### Admission of Pen Packets

In appellant's fourth point of error, he contends that the trial court erred in admitting his "pen packets," records of his prior felony convictions, because they were unduly prejudicial. To prove its case against appellant, the State had to prove that appellant had a prior felony conviction. The records of appellant's felony convictions were relevant to establish an element of the offense of perjury and to demonstrate that appellant's prior convictions were final. We find that the probative value of these records was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* TEX. R.CRIM. EVID. 403. We overrule appellant's fourth point of error.

We affirm the trial court's judgment.