COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-461-CR

 

 

ANTHONY PASCHALL                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  INTRODUCTION








Appellant Anthony Paschall appeals his conviction
for felony driving while intoxicated for which he was sentenced to twenty-five
years=
imprisonment.  Paschall filed a brief
alleging thirteen points of error and later filed documents with this court in
which he waived his fifth through eleventh points.  In his remaining six points, Paschall argues
that the trial court erred by allowing the admission of two exhibits, that the
evidence introduced at trial was legally and factually insufficient to prove
that he had been convicted of the alleged jurisdictional DWI enhancement
paragraphs, and that the evidence was legally and factually insufficient to
support his conviction for driving while intoxicated.  We will affirm.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

A.     The State=s
Witnesses








Karen Morgan testified that on June 14, 2007, she
was driving northbound on I-35E from Dallas to Denton and noticed an SUV moving
slowly near the exit for Corinth Parkway. 
As soon as Morgan passed the SUV, the driver sped up, swerved, and
almost hit the guardrail.  Morgan noticed
that after this near miss, the driver of the SUV Aslowed
way down@ and
seemed to drift into a different lane. 
Then, suddenly, the driver of the SUV sped up again and drove in between
the left and the right lanes, such that he was not in either lane.  The SUV appeared to come within four or five
inches of Morgan=s bumper, so she swerved a
little bit because she thought it was going to hit her.  At that point, Morgan decided to call 9-1-1
because she thought the driver of the SUV was going to cause an accident.  Morgan stayed on the phone with the 9-1-1
operator until she reached the Loop 288 exit, and during that time, the SUV
continued to drift back and then catch up. 
When Morgan exited at Loop 288, she told the 9-1-1 operator that the SUV
continued northbound, and the operator told her that the police had been
called.  Morgan testified that she did
not see the driver drinking; however, she said that the driver=s
continual slowing down and speeding up made her think that he was tired or had
been drinking because the pattern was not like someone who was on a cell phone
or who was putting on makeup and made a sudden, quick swerve.

Officer Brian Coast with the City of Denton
Police Department testified that he was on his way to work on June 14, 2007, between
6:30 and 6:45 p.m. in his marked patrol car when he heard a fire department
calling in about a reckless driver that was headed in Officer Coast=s
general direction.  The police dispatch
immediately started to broadcast information about the reckless driver.  Three civilians had called to report the
reckless driver, along with the fire truck. 
The dispatch described the vehicle in question as an older model
dark-colored Ford Explorer with its headlights on and said that the vehicle was
heading northbound at State School Road. 
Officer Coast made a u-turn and headed towards that area to intercept
the vehicle.








Officer Coast spotted the vehicleCa dark
Ford Explorer with its headlights onCat the
intersection of Teasley Lane; Officer Coast knew that it was the vehicle in
question because one of the callers had stayed on the phone with the 9-1-1
operator and continued to relay the location. 
Officer Coast was southbound on Teasley Lane, so he moved into the
right-turn lane in order to get behind the vehicle.  Officer Coast noted that the driver of the
vehicle had stopped in the intersection blocking two lanes of traffic.  When the light turned green, the vehicle
passed Officer Coast, and Officer Coast moved in behind it.  Before Officer Coast could initiate a traffic
stop, the driver of the vehicle pulled into the parking lot at a 7-Eleven convenience
store and parked.

Officer Coast pulled up behind the SUV and walked
up to contact the driver, who was the sole occupant in the vehicle.  When Officer Coast walked up, the driver was
in the process of getting out of the vehicle. 
Officer Coast saw that the driver was fumbling and struggling with the
seat belt, which was Ahung up@ on his
arm.  After the driver got out, Officer
Coast noticed that the driver=s shorts
were unzipped.  Officer Coast asked the
driver for identification, and the driver provided it, revealing that he was
Anthony Paschall.

Officer Coast asked Paschall why his pants were
undone, and he replied that he was on his way from Dallas to Oklahoma and had
an urgent need to urinate.  Officer Coast
asked Paschall if he had consumed anything to drink or if he had taken any
medication, and Paschall said that he had not taken any medications nor
consumed anything to drink.  Officer
Coast did not smell alcohol on Paschall.








Officer Coast decided to initiate a DWI
investigation because he had noticed that Paschal=s speech
was slurred and that he was swaying and appeared to seek out something to hold
onto to steady himself while they were talking. 
At trial, Officer Coast explained the three field sobriety tests to the
jury and stated that the horizontal gaze nystagmus (HGN) test is important in a
DWI investigation because HGN is caused only by alcohol, depressants,
inhalants, PCP, or a brain stem injury. 
During the HGN test, Officer Coast noticed that Paschall=s pupils
were Avery
constricted@ and that Paschall exhibited
four clues on the test, which was enough to indicate intoxication by an
inhalant, a depressant, or PCP.

Officer Coast then began to give Paschall the
instructions for the walk-and-turn test. 
Paschall, however, interrupted him and advised that he would be unable
to take the test because he had undergone surgery on his left foot.  Officer Coast omitted the walk-and-turn test
and asked Paschall to perform the one-leg stand after he had answered
affirmatively when asked if he could stand on one leg.  After Paschall failed the test, he said that
he had undergone operations on both feet.








Officer Coast then asked Paschall what his highest
level of education was, and Paschall responded that he had earned an associate=s
degree.  Officer Coast asked Paschall to
recite the alphabet from D to Q, and Paschall said, AE, F, G,
H, Q.@  Officer Coast asked Paschall to say the
alphabet from beginning to end, and Paschall said, AA, B, C,
D, E, F, G, H, Q, Z.@ 
Paschall responded correctly when asked how many letters are in the
alphabet.

Officer Coast moved on to the counting test and
asked Paschall to count backwards from fifty-six to twenty-seven.  Paschall started counting forward, so Officer
Coast interrupted him and allowed him to start over.  Paschall said the number fifty twice and then
asked Officer Coast to repeat the instructions again.  Paschall eventually started with fifty and
counted backward slowly to forty-two and stopped.

At that point, Paschall asked, AWhere
are we going with this?@ 
Officer Coast said that he was trying to determine Paschall=s level
of intoxication, and Paschall told Officer Coast to search his car.  Officer Coast again asked Paschall whether he
had drunk anything, and Paschall responded this time that he had consumed Aone or
two@ that
morning around 7 or 8 a.m.  The search of
the car did not reveal any drugs or alcohol.








Officer Coast concluded that Paschall did not
have the normal use of his mental or physical faculties and that the cause for
that was something other than alcohol. 
Officer Coast arrested Paschall and took him to the Denton County
Jail.  Officer Coast did not offer
Paschall a breath test because that tests only for alcohol.  When Officer Coast offered Paschall a blood
test, he chose to have his license suspended for six months rather than consent
to the test.

On cross-examination, Officer Coast admitted that
his observation of Paschall=s
driving before he pulled into the 7-Eleven did not match what had been
described on the radio; Paschall had pulled into a parking space appropriately,
exited his vehicle without stumbling or falling, and did not smell like
alcohol.  Officer Coast admitted that,
prior to the start of the HGN test, the sun was in Paschall=s eyes,
but Officer Coast asked Paschall to move to a shaded area in order to properly
perform the HGN test.  Officer Coast
testified that the walk-and-turn test is not a good indicator for people who
are fifty or sixty, those who are more than fifty pounds overweight, and those
who have physical disabilities or injuries.

Officer Coast testified that Paschall did not
sway while he was standing in the Intoxilyzer room at the jail; however, he
noted that Paschall had propped himself up against the wall, braced himself
against the wall with his hand, and put his feet shoulder-width apart, which
provided a stable platform.  Officer
Coast said that he performed the vertical nystagmus test, in addition to the
HGN test, on Paschall and that he did not see any vertical nystagmus, which, if
present, can indicate drug use or extremely high doses of alcohol.








Jeremy Hunter, a detention officer with the
Denton Police Department, testified that he booked Paschall into the jail on
June 14, 2007, and that Paschall provided an emergency contact number.  When Hunter completed the medical screening
on Paschall, Paschall said that he took Celexa, Trazodone, and Thorazine[1]
and gave his birth date as January 13, 1956.

Melissa Giguere testified that she works in the
computer support division at the sheriff=s
office.  She said that the majority of
the inmates in the Denton County Jail are housed in podsCopen
rooms without walls that have bunk beds lining the sides of the rooms.  The pods contain telephones for use by the
inmates.  She oversees the recording of
the phone calls placed by the inmates on the pod phones.  She explained that each inmate is assigned a
PIN to use when making phone calls and that a recording tells the inmate that
the phone call will be recorded.








She searched the system for all phone calls made
using Paschall=s PIN and transferred them to a
CD.  She noted that the phone calls at
issue were made to a number similar to Paschall=s
emergency contact number.

The jury heard the recording of a phone call made
using Paschall=s PIN.  During the phone call, Paschall said Athey@ were
trying to use a charge of DWI to enhance and turn the current DWI into a
felony.[2]  Paschall said that Athey@ have to
find three DWIs where the pictures and fingerprints match up and that Athey@ never
fingerprinted or photographed him on the two DWIs he committed in Brownsville.

Before the State rested its case in chief, the
trial court took judicial notice, upon the State=s
request, that Brownsville is the county seat of Cameron County, Texas.  The trial court also admitted, over defense=s
objection, State=s Exhibit 5 and State=s
Exhibit 6, which contained judgments for two prior DWI convictions for Anthony
Dean Paschall.

B.     Paschall=s
Witness








Paschall called Captain Douglas Sanders to
testify.  Sanders, the Denton County
Correctional Facility Health Director who oversees the access and delivery of
mental and medical healthcare for adults and juveniles, testified that Paschall
was treated for problems with a disk in his back while he was in the Denton
County Jail.  Sanders testified that
Paschall=s
medical records revealed that he has a degenerative back disease and a
congenital disk fusion and that his course of care included anti-inflammatories
and muscle relaxants.  Sanders testified
that Paschall=s back problems could affect his
balance and coordination.  Sanders said
that the mental health authorities had listed Paschall as bipolar.








On cross-examination, Sanders testified that the
medical records showed that Paschall had undergone a left Achilles
reconstruction in 1996 but did not reference an injury to the right foot.  Sanders testified that during the year that
Paschall had been in jail, he had not exhibited any problem Agetting
around.@  Sanders said that the medical records
demonstrated that Paschall was an alcoholic and was addicted to or an abuser of
prescription drugs.  The records
contained notations that Paschall could not have any more refills on drugs
because he was overtaking them and constantly trying to get more prescription
drugs.  The records revealed that
Paschall was taking Klonopin, a drug in the benzodiazepine family that has a
synergistic effect with alcohol.  On
redirect, Sanders testified that the medical records regarding the
benzodiazepine drugs dated back to 2005 and 2006 and that the prescribing
doctors took steps to change his medications to get him off those drugs.

C.     Outcome of Trial

After hearing the above testimony, the jury found
Paschall guilty of the felony offense of driving while intoxicated as alleged
in the indictment and assessed his punishment at twenty-five years=
confinement.  The trial court accepted
the jury=s
verdict and sentenced Paschall in accordance with the jury=s
recommendation.  This appeal followed.

                                    III.  STANDARDS OF REVIEW

In his first four points, Paschall challenges
both the admission of the exhibits, as well as the sufficiency of the evidence
to prove that he was the same person who was convicted of the prior DWIs shown
in the exhibits.  In his twelfth and thirteenth
points, Paschall challenges the sufficiency of the evidence to prove that he
was intoxicated at the time he was arrested on the 2007 DWI charge.  We will therefore apply the abuse of
discretion standard of review and the legal and factual sufficiency standards
of review set forth below where they are applicable.

A.     Abuse of Discretion








We review a trial court=s
decision to admit evidence under an abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  As long as the trial court=s ruling
falls within the zone of reasonable disagreement, we will affirm its
decision.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
The trial court=s decision must be reasonable in
view of all the relevant facts.  Santellan
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate court would in a similar circumstance does

not demonstrate that an abuse of discretion has occurred.  Manning v. State, 114 S.W.3d 922, 926
(Tex. Crim. App. 2003).

B.     Legal Sufficiency

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Grotti
v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  However, we may not
affirm a conviction based on legal or factual grounds that were not submitted
to the jury.  Malik, 953 S.W.2d at
238 n.3.  The law as authorized by the
indictment means the statutory elements of the charged offense as modified by
the charging instrument.  See Curry v.
State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).  The standard of review is the same for direct
and circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper,
214 S.W.3d at 13.

C.     Factual Sufficiency








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7.

                                IV.  EXHIBITS PROPERLY ADMITTED








In his first through fourth points, Paschall
contends that the trial court erred by allowing the admission of State=s Exhibits
5 and 6Cjudgments
and documents related to two prior DWI convictionsCbecause
they were not properly connected to him, were irrelevant, and were more
prejudicial than probative and because the evidence was legally and factually
insufficient to prove that he had been convicted of the alleged jurisdictional
DWI enhancement paragraphs.  The State
responds that it provided sufficient proof that Paschall was the same person
identified in the exhibits, that the exhibits were relevant because Paschall
contested that he was the person named in the prior convictions, and that the
evidence introduced at trial was legally and factually sufficient to prove that
Paschall had been convicted of the DWIs shown on the convictions that were used
to enhance jurisdiction.

DWI is a conduct-oriented offense; it does not
require proof of a culpable mental state. 
Nelson v. State, 149 S.W.3d 206, 210 (Tex. App.CFort
Worth 2004, no pet.).  A person commits
the crime of DWI if he Ais intoxicated while operating a
motor vehicle.@ 
Tex. Penal Code Ann. ' 49.04(a)
(Vernon 2003).  The elements of that
crime are (1) the defendant, (2) operated, (3) a motor vehicle, (4) while
intoxicated, and (5) on or about the date alleged in the State=s
charging instrument.  Id.  In a felony DWI case, the State must prove,
in addition to the aforementioned elements of that primary offense, that the
accused has twice previously, and sequentially, been convicted of DWI.  Id. ' 49.09(b)(2).








To establish that a defendant has been convicted
of a prior offense, the State must prove beyond a reasonable doubt that (1) a
prior conviction exists, and (2) the defendant is linked to that
conviction.  Flowers v. State, 220
S.W.3d 919, 921 (Tex. Crim. App. 2007). 
No specific document or mode of proof is required to prove these two
elements.  Id.  While evidence of a certified copy of a final
judgment and sentence may be a preferred and convenient means, the State may
prove both of these elements in a number of ways, including documentary proof
(such as a judgment) that contains sufficient information to establish both the
existence of a prior conviction and the defendant=s
identity as the person convicted.  Id.
at 921B22.  Any type of evidence, documentary or
testimonial, might suffice.  Id. at
922.  Additionally, the State may
establish a prior conviction by admitting certified copies of a judgment and a
sentence and authenticated copies of the Texas Department of Corrections (n/k/a
Texas Department of Criminal JusticeCInstitutional
Division) records, including fingerprints, supported by expert testimony
identifying them as identical with known prints of the defendant.  Beck v. State, 719 S.W.2d 205, 209
(Tex. Crim. App. 1986).  The factfinder
looks at the totality of the evidence to determine whether the State proved the
prior conviction beyond a reasonable doubt. 
Flowers, 220 S.W.3d at 923.








Here, State=s
Exhibit 5 contains certified copies of documents, including a AJudgment
On Plea Of Guilty Or No Contest@ in
Cause No. 01-CCR-3615-C, showing that Anthony Dean Paschall, I.D. #126409, was
found guilty of the offense of driving while intoxicated on April 22, 2001, by
the County Court at Law No. 3 in Cameron County.  The judgment contains a faded right thumb
print and has conditions of community supervision attached, stating that the
punishment will run concurrent with Cause No. 01-CCR-3810-C.  State=s
Exhibit 6 contains certified copies of documents, including a AJudgment
On Plea Of Guilty Or No Contest@ in
Cause No. 01-CCR-3810-C, showing that Anthony Dean Paschall, I.D. #126409, was
found guilty of the offense of driving while intoxicated on January 3, 2001, by
the County Court at Law No. 3 in Cameron County.  The judgment contains a faded right thumb
print.  Included with State=s
Exhibit 6 is a document entitled AState=s Motion
To Revoke Probated Sentence,@ which
lists Paschall=s date of birth as January 13,
1956.  Another document included with
State=s
Exhibit 6 is AOrder Setting Hearing And
Ordering Arrest@ and is dated March 17, 2003,
which gives the following physical description of Paschall:

AGE:         47                                    HAIR:                Brown                 

RACE:       Anglo                                        HEIGHT:             5'9"                   

SEX:          Male                                  WEIGHT:            160
lbs.              

EYES:        Blue                                  COMPLEXION:     Light                  


 

The section with AOTHER
IDENTIFYING MARKS TATTOOS/SCARS@ is
blank.  The jury in this case heard
Hunter, the book-in officer, testify that Paschall=s birth
date is January 13, 1956.  State=s
Exhibit 5 and State=s Exhibit 6, which include the
same name and ID number and show punishments in each cause will run
concurrently, are therefore sufficiently connected to one another.  The jury, moreover, was able to view Paschall
during the trial and compare him to the description given in State=s
Exhibit 6, and to find that he appeared to be the same person.








And, despite Paschall=s
objection that the judgments Ahaven=t been
properly tied to [him],@ the jury heard a tape of a
phone call made from the jail using Paschall=s PIN
number in which the caller, presumably Paschall, admitted he had been convicted
of two DWIs in Brownsville.  The trial
court, moreover, took judicial notice that Brownsville is the county seat of
Cameron County.








On this collective evidence, we believe that the
jury could have properly concluded, beyond a reasonable doubt, that the Anthony
Paschall then on trial was the same AAnthony
Dean Paschall@ who had been convicted of DWI
in Cameron County cause numbers 01-CCR-3615-C and 01-CCR-3810-C.  See Dorsett v. State, 396 S.W.2d 115,
116 (Tex. Crim. App. 1965) (stating that evidence was held sufficient when the
jury had the opportunity to observe the accused and determine by comparison
with the description in the record whether he is the same person previously
convicted); Ruffin v. State, No. 01-97-00929-CR, 1999 WL 274998, at *2
(Tex. App.CHouston [1st Dist.] May 6, 1999,
pet. ref=d) (not
designated for publication) (holding that sufficient evidence existed to
establish that appellant was the same individual convicted in cause number
35374 because the jury had an opportunity to observe appellant in the courtroom
and compare the description in exhibit to his physical appearance).  Moreover, because the State had to prove that
Paschall had two prior DWI convictions, State=s
Exhibit 5 and State=s Exhibit 6 were relevant to
establish an element of the offense of felony DWI and to demonstrate that
Paschall was the same person as the person convicted of the prior two
DWIs.  Cf. Thorn v. State, 961
S.W.2d 12, 19 (Tex. App.CDallas 1996, pet. ref=d)
(holding that records of appellant=s felony
convictions were relevant to establish an element of the offense of perjury and
to demonstrate that appellant=s convictions
were final).  As such, we hold that the
value of these records was not substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury when Paschall had
not stipulated to the prior convictions. 
See Tex. R. Evid. 403; see generally Tamez v. State, 11
S.W.3d 198, 202B03 (Tex. Crim. App. 2000)
(stating that it is an abuse of discretion to admit records when an admission
is available); cf. Thorn, 961 S.W.2d at 19 (holding that probative value
of prior convictions in perjury case was not substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury
when prior felony convictions were relevant to establish element of offense for
which appellant was on trial).








Accordingly, we conclude that the evidence, as
measured against the applicable hypothetically correct jury charge, showed (1)
that the two Cameron County convictions existed and (2) that the person named
Paschall then on trial was linked to those two Cameron County convictions.  Thus, we hold that the evidence was legally
and factually sufficient to show that Paschall had been previously convicted of
the two prior DWI offenses that occurred in Cameron County as alleged in the
indictment.  See Reese v. State,
273 S.W.3d 344, 347B48 (Tex. App.CTexarkana
2008, no pet.) (holding that evidence was legally and factually sufficient to
support finding that defendant was same person convicted of two prior DWIs even
though judgment for second prior offense listed only offender=s name
with no further identifying identification; record included community supervision
data sheet from second DWI offense, listing identifying information, and a copy
of first DWI conviction); see also Flowers, 220 S.W.3d at 923B25
(holding that evidence was legally sufficient to prove enhancement paragraph
beyond a reasonable doubt when trial court had certified copy of appellant=s driver=s
license record and computer printout from county to prove appellant=s prior
DWI conviction).  We overrule Paschall=s first
through fourth points.

                   V.  SUFFICIENT EVIDENCE
TO SUPPORT DWI CONVICTION








In his twelfth and thirteenth points, Paschall
contends that the evidence is legally and factually insufficient to support his
conviction for driving while intoxicated. 
Specifically, Paschall argues that the State failed to prove that he was
intoxicated by the introduction into his system of alcohol, a controlled
substance, a drug, or a combination of two or more of the previous substances,
or any other substance.  The State
responds that direct evidence proved Paschall=s loss
of normal use of his mental of physical faculties and that circumstantial
evidence proved Paschall=s loss of normal use of his
mental or physical faculties was by reason of his ingestion of a controlled
substance, a dangerous drug, or another substance.

The Texas Penal Code defines Aintoxicated@ as

(A) not having the normal use of mental or physical faculties by
reason of the introduction of alcohol, a controlled substance, a drug, a
dangerous drug, a combination of two or more of those substances, or any other
substance into the body;[3]
or

 

(B) having an alcohol concentration of 0.08 or more.

 

Tex. Penal Code Ann. ' 49.01(2)
(Vernon 2003).  The fact that a person
does not have the normal use of his mental or physical faculties by reason of
introduction of a controlled substance or a dangerous drug into his body may be
proved by circumstantial evidence.  See
Smithhart v. State, 503 S.W.2d 283, 284 (Tex. Crim. App. 1973).[4]








In Payne v. State, the jury heard officers
describe appellant=s demeanor and performance on
the sobriety tests, including that appellant seemed drowsy, had poor balance,
and mumbled.  No. 12-02-00312-CR, 2003 WL
22047776, at *8 (Tex. App.CTyler
Aug. 29, 2003, pet. ref=d) (mem. op., not designated for
publication).  A doctor testified that
Soma and Lortab, which appellant admitted taking on the morning of the
accident, caused drowsiness.  Id.  The jury thus had before it both direct
evidence, showing that appellant had lost the normal use of his mental or
physical faculties, and circumstantial evidence of appellant=s
intoxication by reason of the introduction of one or more substances into her
body.  Id.








Here, concerning the
loss-of-normal-use-of-mental-or-physical-faculties prong of Aintoxicated,@ the
jury had before it the eyewitness=s
testimony regarding Paschall=s
driving, Officer Coast=s description of Paschall=s
performance on the field sobriety tests, the video of Paschall performing the
field sobriety tests, Detective Fisher=s
testimony that HGN is an accurate measure of intoxication, and Officer Coast=s
conclusion that Paschall did not have the normal use of his mental or physical
faculties.  This direct evidence was
legally sufficient for the jury to form a firm conviction or belief that
Paschall did not have the normal use of his mental or physical faculties.  See Compton v. State, 120 S.W.3d 375,
380 (Tex. App.CTexarkana 2003, pet. ref=d) (holding
evidence legally and factually sufficient to support DWI conviction when jury
had before it State Trooper=s
testimony surrounding the stop and viewed the video recording of appellant=s
performance on field sobriety tests); Rumage v. State, No.
12-02-00190-CR, 2003 WL 21999347, at *3B4 (Tex.
App.CTyler
Aug. 20, 2003, no pet.) (mem. op., not designated for publication) (holding
evidence legally and factually sufficient to support DWI conviction after
reviewing testimony of arresting officer, driver of other vehicle, and
appellant and watching video of appellant as he performed field sobriety
tests).[5]








Concerning the
by-reason-of-introduction-of-a-controlled-substance-or-dangerous-drug-or-other-substance-into-his-body
prong of Aintoxicated,@ the
State offered circumstantial evidence. 
Specifically, the State offered and the trial court admitted (1)
pharmacist Sam Tipton=s testimony that the two drugs
that Paschall listed on his medical intake form as drugs he was takingCThorazine
and TrazadoneCare central nervous system
depressants that would cause a person intoxicated by use of the drugs to
exhibit slurred speech, affected balance, abnormal gait, and constricted pupils
and that it would be dangerous for a person so intoxicated to drive, and (2)
Officer Coast=s testimony that Paschall
exhibited slurred speech, swaying, and constricted pupils at the 7-Eleven and
that he, Officer Coast, did not smell alcohol on Paschall.  This evidence was legally sufficient to
permit the jury to infer that Paschall=s loss
of the normal use of his mental or physical faculties was by reason of the
introduction of Aa controlled substance, a drug,
a dangerous drug, a combination of two or more of those substances, or any
other substance@ into his body.[6]  See Payne, 2003 WL 22047776, at
*8.  We hold that a rational trier of
fact could have found the essential elements of DWI beyond a reasonable
doubt.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778; see also Guyett
v. State, No. 11-08-00003-CR, 2008 WL 3846221, at *1, 3 (Tex. App.CEastland
Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (holding
evidence legally sufficient to support DWI conviction based on intoxication by
prescription drugs); Gray v. State, No. 05-04-01269-CR, 2005 WL 1670715,
at *6B7 (Tex.
App.CDallas
July 19, 2005, no pet.) (not designated for publication) (same).













With regard to the factual sufficiency of the
evidence, we are required to review all the evidence in a neutral light.  The record here contains evidence that no
alcohol or drugs were found in Paschall=s car;
that there were no breath or blood tests; and that Paschall=s
cognitive problems, injuries, and degenerative disk disease could have affected
his performance on the field sobriety tests. 
The record also contains no evidence of an alternative explanationCsuch as
sleeplessness, emotional trauma, etc.Cfor
Paschall=s
erratic driving and failure of sobriety tests. 
Applying the standard of review to all the evidence, after listening to
the testimony surrounding Paschall=s stop
and viewing the video recording of his performance on the field sobriety tests,
the jury chose, as it was entitled to do, to give less weight to Paschall=s
physiological explanations for his poor performance on the field sobriety tests
and chose to give more weight to the eyewitness=s and
officer=s
accounts of the events.  Deferring to the
jury=s role
as Athe sole
judge of the weight and credibility given to witness testimony@ and
viewing all the evidence in a neutral light, favoring neither party, we
therefore hold that the evidence supporting Paschall=s felony
DWI conviction, although legally sufficient, is not so weak that the factfinder=s
determination is clearly wrong and manifestly unjust and that conflicting
evidence does not so greatly outweigh the evidence supporting the conviction
that the factfinder=s determination is manifestly
unjust.  See Neal, 256 S.W.3d at
275; Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15, 417;
see also Guyett, 2008 WL 3846221, at *1, 3 (holding evidence
factually sufficient to support DWI conviction, despite testimony that
appellant had undergone three brain surgeries and spinal surgery); Gray,
2005 WL 1670715, at *7 (holding evidence factually sufficient, despite
testimony that tie rod on appellant=s car
broke and caused her to lose control, because jury was free to believe officer=s
accounts of field sobriety tests and video of intoxilyzer room testing); Payne,
2003 WL 22047776, at *9 (holding evidence factually sufficient, despite
evidence that appellant was ill and not intoxicated on the morning of the
accident, because jury was free to believe eyewitnesses= and
officers=
accounts of what they saw).  We overrule
Paschall=s
twelfth and thirteenth points.

                                          VI.  CONCLUSION

Having overruled Paschall=s first,
second, third, fourth, twelfth, and thirteenth points,[7]
we affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

 

PANEL: CAYCE, C.J.;
DAUPHINOT and WALKER, JJ.

 

DAUPHINOT, J. filed a
dissenting opinion.

 

PUBLISH

 

DELIVERED: April 2, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-461-CR

 

 

ANTHONY
PASCHALL                                                          APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








I must respectfully dissent from the majority=s
thorough and detailed opinion because there is no evidence that Appellant was
intoxicated by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, or a combination of any two or more of these
substances.[1]  The jury heard evidence that Appellant=s speech
was slurred, his pupils were constricted, and he could not or would not perform
the field sobriety tests.  His driving
indicated a lack of the normal use of his mental or physical faculties.  The testing officer said the horizontal gaze
nystagmus (HGN) test revealed four clues of intoxication or brain stem injury,
but there was no odor of alcohol.  The
police did not seek to administer a breathalyzer test because there was no odor
of alcohol.

The police concluded that Appellant did not have
the normal use of his mental or physical faculties, but the cause was Asomething
other than alcohol.@

Intoxication is a term that is defined in the
penal code.[2]  Intoxication by the introduction of alcohol
and/or certain drugs is an essential element of the offense of driving while
intoxicated (DWI).[3]  Intoxication, then, must be proved.  It is not sufficient to prove just that a
person Awasn=t acting
right.@  It is not enough to conclude that he must
have taken something, but we know it was not alcohol.








Here, Appellant did not consent to a blood
test.  The officers could have sought a
warrant to allow them to draw blood. 
They did not.  They found no drugs
on Appellant or in his vehicle.  He did
not admit to taking any drug or medication, nor did anyone testify that he had
taken drugs, prescribed or otherwise. 
His jail medical records showed prescriptions for certain drugs, but the
jury heard no evidence that he had taken them the day he was arrested.

The majority relies on cases holding that the
officer=s
opinion of intoxication is sufficient. 
In those cases, however, there was evidence that the defendant had
ingested alcohol, drugs, or both.  In Compton
v. State, the defendant Asmelled
of alcohol;  had slurred speech;  admitted drinking two beers; [and] had a
cold, open bottle of beer in his truck . . . .@[4]

The other cases the majority relies on are 

$                  
Rumage v. State, an unpublished case in which A[t]he officer testified he initially smelled
alcohol on [Rumage=s] breath and noticed his
speech was slurred.  The driver of the
other vehicle told the officer that she had seen [Rumage] at the restaurant
where she worked drinking an alcoholic beverage shortly before the wreck@;[5]

 








$                  
Payne v. State, an unpublished case in which Payne admitted drinking a 16-oz. beer
around 7:00 a.m., about five hours before the accident, taking Lortab and Soma
the morning of the accident, and taking another Lortab before lunch.[6]  She
ate a sandwich at 11:00 and then left work. 
The accident occurred on her way home from work.  She was incoherent and did not know where she
was when the police interviewed her at the accident scene;[7]

 

$                  
Guyette v. State, an unpublished case in which Guyette admitted that she was taking
prescription medication as prescribed by her doctor, acknowledged that some of
her medication was accompanied by a warning that it might cause drowsiness and
affect the ability to drive, and stated that she had taken the drugs for years
and was Aacclimated@ to them and that neither
her doctors nor DPS had told her that she could not drive;[8] and

 

$                  
Gray v. State, an unpublished case in which Gray admitted that she had taken
hydrocodone the night before, and the officer testified that hydrocodone is a
controlled substance and that he found an empty prescription bottle for it in
the car and as well as loose pills, an indication that she had taken the drug
more recently than the night before.[9]

 








In all the cases relied on by the majority, there
was evidence that the defendant drank alcohol and/or took the drugs near the
time of the arrest, or, as in Gray, evidence of the presence of drugs or
alcohol in the vehicle driven by the defendant. 
In the case now before this court, Appellant admitted to one or two
drinks at 7:00 or 8:00 a.m. the morning of his arrest; he was not pulled over
until around 6:30 or 6:45 p.m., more than eleven hours later, and the police
officers were convinced that he had not been drinking, so convinced that they
did not offer him a breath test.  He did
not testify that he had taken any drugs, no drugs were found in his vehicle,
and no blood test was performed.

The majority holds that the pharmacist=s
testimony regarding the effect of drugs Appellant listed on his jail intake
form as drugs he was taking, combined with the arresting officer=s
description of Appellant=s swaying, slurred speech, and
constricted pupils, as well as the absence of the odor of alcohol, was
sufficient evidence to support the jury=s
verdict.  Respectfully, I cannot agree.








There is no presumption of intoxication.  Slurred speech, constricted pupils, and
swaying may indicate intoxication, but such evidence only goes to the element
of lack of normal use.  It is not, in and
of itself, proof of introduction into the body of a drug or controlled
substance or alcohol, a necessary element of intoxication that the State must
prove.[10]  If, rather than having the actual drug,
having a prescription for a drug which, if used or abused, deprives a person of
the normal use of his mental or physical faculties is sufficient to prove
intoxication, no one who has been prescribed a sleeping pill, a muscle
relaxant, cough medicine, or pain medication could ever drive without violating
the DWI statute.  The State must prove
more than the mere opportunity to ingest the medication.

The legislature has balanced the interests of
society and law enforcement against the due process rights of a defendant by
providing the State the ability to draw and test a defendant=s
blood.  The police, although candid in
admitting that there was no odor of alcohol despite Appellant=s
history of alcohol abuse and thorough in searching out Appellant=s
medical records to trace his medical history, provided the State with no more
than a guess as to the reason for Appellant=s lack
of coordination and slurred speech.  I
would hold that a guess is not sufficient evidence to support a felony
conviction.

For these reasons, I respectfully dissent from
the majority=s opinion upholding the trial
court=s
judgment. 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

 

DELIVERED: April 2, 2009











[1]Sam Tipton, a pharmacist,
testified that Thorazine is an antipsychotic agent and is an example of a
central nervous system depressant. 
Tipton said that Trazadone is also a central nervous system depressant.  If a person was intoxicated by one of these
two substances, they would exhibit slurred speech, their balance would be
affected, their gait would not be normal when they walked, their pupils could
be constricted, and it would be dangerous for them to drive.  On cross-examination, Tipton testified that
he would need to know the dosage and the frequency of the dosage, the time of
the last dose, and whether food had been consumed in order to gauge whether the
person was intoxicated by these drugs.





[2]Although the State in its
brief indicates that Paschall identified his attorney as Daniel Peugh, the
record before usCState=s Exhibit 3 from
01:22-01:57Cdoes not indicate that
the part of the recording containing that information was played for the jury.





[3]This definition was
included within the indictment, and the application paragraph of the jury
charge tracked the indictment.





[4]In Smithhart, the
Texas Court of Criminal Appeals placed some limits on the admissibility of
non-expert testimony on whether a person is under the influence of drugs; but
the Court explicitly held that the State could prove this element by
circumstantial evidence.  See id.





[5]The dissent would require
direct evidence of ingestion of a specific drug.  The penal code and the jury charge here,
however, simply require evidence that appellant=s loss of normal use was
by reason of the introduction of Aa drug, a dangerous drug, a combination of two or
more of those substances, or any other substance.@  See Tex. Penal Code Ann. ' 49.01(2).





[6]We do not hold, as the
dissent contends, that merely possessing a prescription for a drug deprives a
person of the normal use of his mental or physical faculties.  Instead, the State must prove, as it did
here:  first, that appellant lost the
normal use of his mental or physical faculties, and second, that appellant=s loss of his mental or
physical faculties was by reason of the introduction of Aany . . . substance@ into his body.  See Tex. Penal Code Ann. ' 49.01(2).  Contrary to the dissent=s position, a person may
drive after taking a prescription medication so long as that person has not
lost the normal use of his mental or physical faculties by reason of
introduction of the prescription drug into his body.





[7]As noted in the opening
paragraph of this opinion, Paschall waived his fifth through eleventh
points.  We therefore need not address
them.  See Tex. R. App. P. 47.1.





[1]See Tex. Penal Code Ann. ' 49.01(2)(A) (Vernon
2003).





[2]See id.





[3]See id. '' 49.01(2)(A),
49.04(a).





[4]Compton v. State, 120 S.W.3d 375, 379 (Tex.
App.CTexarkana 2003, pet. ref=d).





[5]Rumage v. State, No. 12-02-00190-CR,
2003 WL 21999347, at *2 (Tex. App.CTyler Aug. 20, 2003, no pet.) (mem. op., not
designated for publication).





[6]Payne v. State, No. 12-02-00312-CR, 2003
WL 22047776, at *5B6 (Tex. App.CTyler Aug. 29, pet. ref=d) (mem. op., not
designated for publication).





[7]Id.





[8]Guyett v. State, No. 11-08-00003-CR,
2008 WL 3846221, at *2 (Tex. App.CEastland Aug. 14, 2008, no pet.) (mem. op., not
designated for publication).





[9]Gray v. State, No. 05-04-01269-CR,
2005 WL 1670715, at *6 (Tex. App.CDallas July 19, 2005, no pet.) (not designated
for publication).





[10]Tex. Penal Code Ann. '' 49.01(2)(A), 49.04(a).