**James Douglas NELSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–03–206–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 2004.

Rehearing Overruled Sept. 30, 2004.

**3.** Because of our resolution of this issue, we need not address the City's remaining issues.

Richard Gladden, Denton, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Anne Swenson, David M. Curl, Raquel "Rocky" Jones, Sam Williams, Asst. Crim. Dist. Atty's, Fort Worth, for State.

Panel A: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

James Douglas Nelson appeals from his conviction for driving while intoxicated (DWI). In four issues, appellant complains that: (1) the trial court erred by denying appellant's request for a special jury instruction on the defensive theory of medically-induced involuntary intoxication; (2) the trial court's failure to give the special jury instruction on involuntary intoxication violated appellant's constitutional rights to due process under the state and federal constitutions and due course of law under the federal constitution; (3) the trial court's failure to give the special jury instruction on automatism was calculated to injure the rights of appellant and requires a reversal of the conviction because the trial court's refusal denied appellant the right to a fair trial and contributed to his conviction; and (4) the trial court erred by entering a judgment sentencing appellant to five days' confinement instead of seventy-two hours, and the judgment must be reformed. We affirm the judgment as reformed.

### Facts

Appellant was diagnosed with degenerated and herniated discs in his back, and his doctor gave him prescriptions for three medications to manage his pain.[1] Appellant refilled the prescriptions at a local pharmacy on August 5, 2002. Approximately eleven days later on August 16, 2002, appellant woke up at around 5:00 a.m. with muscle spasms and a numb feeling in his arm and took a two-milligram dose of Alprazolam, a muscle relaxant (generic Xanax), a thirty-five-milligram dose of Soma (a muscle relaxant), and a ten-milligram dose of Hydrocodone (generic Lortab), a narcotic.[2] Appellant also ate a sausage biscuit and drank a "protein shake" and coffee with his medication. The evening before, appellant also took a generic Darvocet for pain relief. Appellant left for work at 6:15 a.m. and arrived at work at 7:00 a.m. But, thirty-five minutes after being at work appellant still felt numbness and pain in his leg and arm, so he decided to drive home. While driving home, the Arlington police stopped appellant for driving erratically. The police

---

1. Appellant was diagnosed with this condition and was first prescribed medication in late 1998 or early 1999.

2. Appellant's doctor did not advise him that taking the medications would impair his mental or physical faculties, nor did the pharmacy include any labels with or on the prescription bottles warning that the medicines would impair his mental or physical faculties.

arrested appellant for DWI around 8:30 a.m.

At trial, appellant admitted to taking four types of prescription drugs during the morning of and the evening before the stop. He also admitted that this was not the first time that he had taken the drugs and that he knew their effects. Appellant conceded that the police videotape of him driving showed that he was weaving, but contended that he was weaving because he dropped the cigarette lighter and was looking for it. Ultimately, appellant admitted at trial that he had been intoxicated while driving his car. Police test results of appellant's urine sample were positive for the presence of the drugs Hydrocodone, Alprozolam, Propoxyphene, Carisoprodal, and Meprobamate. Prior to trial, appellant filed several pleadings raising claims of medically-induced automatism and involuntary intoxication. Appellant requested a special jury instruction on automatism and theories of involuntary intoxication. The trial court denied his request and overruled his objections relating to the request. The jury convicted appellant of the offense of DWI and assessed punishment.

## Jury Instructions

In his first three issues, appellant complains that the trial court erred by denying appellant's requests for special jury instructions on automatism and medically-induced involuntary intoxication. Appellant argues that the trial court's denial of his request to give the instructions violated his constitutional rights to due process under the state and federal constitutions and due course of law under the federal constitution and was calculated to injure appellant's right to a fair trial. The State responds, arguing that appellant's complaints on the special instruction were waived because appellant failed to argue how his requested instruction on involun-

tary intoxication was raised by the evidence. Alternatively, the State argues that there was no evidence that would require the trial court to charge the jury on involuntary intoxication. The State also contends that appellant's constitutional complaints were waived because appellant never presented those claims to the trial court for a ruling.

## Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure [the] rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000).

## Discussion

A review of the record reveals that appellant did not waive his complaints as

the State contends. *See* TEX.R.APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Appellant presented his specific arguments and objections to the trial court at the pretrial hearing and in the numerous pleadings filed in the trial court. The trial court noted appellant's objections on the record and denied appellant's request for the special jury instruction. *See* TEX. R.APP. P. 33.1(a)(2). We hold that appellant's complaints regarding the special jury instruction were not waived; accordingly, we must address whether appellant was entitled to the special instruction and whether the trial court erred by denying it.

Under Texas law, a person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). Intoxicated means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2).

Appellant requested a voluntariness jury instruction that read "[a] person commits an offense only if he voluntarily engages in conduct, including . . . a bodily movement, whether voluntary or involuntary." Other requested instructions equated a "voluntary act" to mean a "conscious act." Appellant also requested an instruction on involuntarily intoxication, which instructed the jury that a person could not be "voluntarily intoxicated" when the person takes prescription medication according to the prescription and has no knowledge of the medication's intoxicating effects. The trial court denied both of the requested instructions.

### Involuntary Intoxication

Involuntary intoxication is a defense to criminal culpability when it is shown that: (1) the accused has exercised no independent judgment or volition in taking the intoxicant; and (2) as a result of his intoxication, the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirement of the law he allegedly violated. *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim.App.1979); *Aliff v. State*, 955 S.W.2d 891, 893 (Tex.App.-El Paso 1997, no pet.). Involuntary intoxication by prescription medication occurs only "if the individual had no knowledge of possible intoxicating side effects of the drug, since independent judgment is exercised in taking the drug as medicine, not as an intoxicant." *Mendenhall v. State*, 15 S.W.3d 560, 565 (Tex. App.-Waco 2000), *rev'd on other grounds* 77 S.W.3d 815, 818 (Tex.Crim.App.2002). The defense of involuntary intoxication does not apply to persons who are unconscious or semi-conscious at the time of the alleged offense. *Mendenhall*, 77 S.W.3d at 818. Likewise, the defense does not apply when, as here, the defendant's mental state is not an element of the alleged offense. *Aliff*, 955 S.W.2d at 893. DWI requires no specific mental state for conviction; in other words, it is a conduct-oriented offense. *Id.*

We note that appellant had been prescribed the medications previously and that the day of the incident was not the first time that appellant volitionally took the same doses of the drugs together at one time. Thus, there was no evidence in the record before us that would raise an issue on the first element of this defense under *Torres*; nothing indicated that appellant took the intoxicating drugs unknowingly or without knowledge of their effect. In fact, appellant admitted that he started taking the same drugs in 1998 or

1999 and testified that he was familiar with their effect. The voluntary taking of prescription drugs, which impair mental or physical faculties, is not a defense to DWI. TEX. PENAL CODE ANN. § 49.10 (Vernon Supp.2004–05); *Aliff,* 955 S.W.2d at 893 (holding defendant not entitled to involuntary intoxication instruction at trial for felony driving while intoxicated, as nothing indicated that defendant took the intoxicating drugs unknowingly or without knowledge of their effect and because involuntary intoxication was defense to criminal culpability and proof of culpable mental state was not required for DWI conviction).

Additionally, although involuntary intoxication is a defense to criminal culpability, proof of a culpable mental state is not required in prosecutions for intoxication offenses, including DWI. *Torres,* 585 S.W.2d at 749; *see also* TEX. PENAL CODE ANN. § 49.11. Thus, under both the *Torres* test and the penal code, appellant was not entitled to an instruction on the defense of involuntary intoxication at the guilt-innocence phase of trial. We hold that the trial court did not err by denying appellant's request for a special jury instruction on the defensive theory of medically-induced involuntary intoxication.

### Automatism

Automatism is the defense of unconsciousness and is a "defense related to but different from the defense of insanity." *Mendenhall,* 77 S.W.3d at 818 n. 4 (quoting WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 4.9 (1986)); *see also* TEX. PENAL CODE ANN. §§ 6.01, 8.01 (Vernon 2003) (describing the insanity defense and voluntary act requirements). Automatism is defined as "one who engages in what would otherwise be criminal conduct is not guilty of a crime if he does so in a state of unconsciousness or semi-consciousness." *Mendenhall,* 77

S.W.3d at 818 n. 4 (quoting WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 4.9 (1986)). In the past, Texas courts have held that states of unconsciousness or automatism, including epileptic states, fall within the defense of insanity. *Loven v. State,* 831 S.W.2d 387, 391 (Tex.App.-Amarillo 1992, no pet.) (noting that, if proven, a defendant's claim that he or she. acted unconsciously during an epileptic seizure is a valid insanity defense to murder); *Bradley v. State,* 102 Tex. Crim. 41, 277 S.W. 147, 148–50 (1925) (somnambulism, or sleepwalking, recognized as a form of insanity); *Zimmerman v. State,* 85 Tex.Crim. 630, 215 S.W. 101, 106 (1919) (op. on reh'g) (same rule should apply for "epileptic insanity" as for "insanity of any other character").

As we noted above, prosecutions under the DWI statute do not require proof of a culpable mental state. *See* TEX. PENAL CODE ANN. § 49.11. However, the focus of any insanity defense is upon the mental state of the accused at the time of the offense. *See id.* § 8.01. Because proof of a culpable mental state is not required to convict a defendant of driving while intoxicated, the insanity defense cannot be a defense to such a charge. *See Beasley v. State,* 810 S.W.2d 838, 840–41 (Tex.App.-Fort Worth 1991, pet. ref'd) (holding that the insanity defense is not available in DWI case). If we consider automatism a form of the insanity defense, it is likewise not available as a defense to a DWI charge. *See id.*

Although automatism is sometimes explained in terms of lack of the requisite mental state for commission of the crime, more recently the court of criminal appeals noted that the better rationale was to consider the defense in terms of the individual not engaging in a "voluntary act." *Mendenhall,* 77 S.W.3d at 818. Appellant takes this position and his argument focus-

es on automatism as involuntary conduct rather than as insanity. He contends that his actual bodily movements—driving from work to home—were involuntary due to his intoxication.

■ Involuntary conduct is a defense to prosecution. *See* Tex. Penal Code Ann. § 6.01. However, in Texas a claim of involuntary conduct is not available when the defendant voluntarily took the intoxicant. *Id.* § 8.04(a); *see also Torres,* 585 S.W.2d at 749 (holding that the defendant must have exercised no independent judgment in taking the intoxicant).

Nothing in the record indicates that appellant was acting involuntarily when he got into his car and drove home from work. In fact, appellant testified that he made the decision to drive home from work because he was in pain. He recalled making the trip home, dropping the lighter in his car while driving, and being pulled over by the police. We see no evidence in the record to indicate that appellant was unconscious or acting involuntarily when he decided to get into his car and drive home from work.

To the extent that appellant is arguing that he was involuntarily intoxicated, we noted above that nothing in the record indicated that appellant took the drugs involuntarily. He admitted to taking the drugs volitionally to deal with his symptoms. He admitted to having taken the same drugs in the same combination starting in 1998 or 1999 and stated that he knew their effect. The fact that appellant took the prescription drugs voluntarily, knowing their effect, bars his claim of involuntary conduct. *See* Tex. Penal Code Ann. § 8.04(a); *see also Torres,* 585 S.W.2d at 749. Accordingly, we hold that appellant was not entitled to a special jury instruction on automatism. The trial court did not err by denying appellant's request

for the special jury instruction. We overrule appellant's first three issues.

**Judgment**

■ In his fourth issue, appellant complains that the trial court erred by entering a judgment sentencing appellant to five days' confinement instead of seventy-two hours' confinement and the judgment must be reformed.

After deliberating on appellant's sentence for less than an hour, the jury sent out a note asking the trial court whether they were required to assign appellant jail time or whether they could choose only a fine. The judge instructed the jury on the range of punishment. The jury returned a sentence of zero days' confinement and a non-probated fine of $300. The trial court instructed the jury that the minimum range of punishment for the offense was seventy-two hours' confinement and sent the jury back to deliberate. This time, the jury assessed appellant's punishment at seventy-two hours' confinement, probated, and/or a $300 fine. The trial court entered a judgment sentencing appellant to five days' confinement and a $300 fine, both probated for twelve months.

Appellant specifically complains that he timely and validly elected to have the jury assess punishment. The jury did so, sentenced appellant to seventy-two hours' confinement, and recommended that the terms of appellant's confinement be probated. Appellant argues that the trial court was without authority to sentence appellant to five-days' confinement, whether probated or not.

■ Article 42.01 of the code of criminal procedure declares that the judgment should reflect that the defendant be punished in accordance with the jury's verdict. Tex.Code Crim. Proc. Ann. art. 42.01, § 1(8) (Vernon Supp.2004–05). Further, where the trial court's judgment differs

from the jury's verdict, the judgment should be reformed to reflect the jury's verdict. *Chudleigh v. State,* 540 S.W.2d 314, 319 (Tex.Crim.App.1976); *Muse v. State,* 815 S.W.2d 769, 772–73 (Tex.App.-Waco 1991, no pet.). There is no provision in the penal code permitting a trial court to alter the jury's verdict when it is in conformity with the statutory range of punishment. *Tufele v. State,* 130 S.W.3d 267, 273 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

An appellate court may correct and reform a trial court judgment to make the judgment congruent with the record. *St. Julian v. State,* 132 S.W.3d 512, 517 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *Nolan v. State,* 39 S.W.3d 697, 698 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The offense of DWI carries a mandatory minimum punishment of seventy-two hours' confinement and the possibility of a fine not to exceed $2,000. TEX. PENAL CODE ANN. §§ 12.22, 49.04(b) (Vernon 2003). The jury's verdict assessing appellant's punishment at seventy-two hours' confinement, probated, and/or a $300 fine was within the statutory range for the offense. We therefore sustain appellant's fourth issue and reform the judgment of the trial court to reflect the jury's verdict of seventy-two hours' confinement, probated, and a $300 fine.

## Conclusion

Having overruled appellant's first, second, and third issues and having sustained appellant's fourth issue, we affirm the trial court's judgment as reformed to reflect the jury's verdict.