

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEVEN SCOTT APILADO, | § | No. 08-16-00358-CR |
| Appellant, | § | Appeal from |
| v. | § | 41st District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee, | § | (TC # 20160D00464) |
| | § | |

## O P I N I O N

Appellant Steven Scott Apilado was indicted for the murder of his father under Sections 19.02(b)(1) and (b)(2) of the Texas Penal Code.   TEX.PENAL CODE ANN. §§ 19.02(b)(1), (2)(West 2011).   The trial court considered and rejected Appellant's request for a jury instruction on the lesser-included offense of manslaughter.   After pleading "not guilty," a jury convicted Appellant of murder, and sentenced him to 80 years' confinement.

In his sole issue on appeal, Appellant complains the trial court erred when it denied his request that the jury be instructed on the lesser-included offense of manslaughter.   Finding no error, we affirm the trial court's judgment.

## BACKGROUND

On the evening of November 28, 2015, Appellant's 79-year old father, Vincent Apilado

was shot in his home and died from a gunshot wound to the head. On the evening of Victor's death, his wife, Elsa, was watching television in her bedroom while Victor and Appellant watched television in the living room. After Vincent decided to go to sleep, Appellant informed his mother, and subsequently his father, that he could not sleep. Vincent returned to the living room to stay with Appellant. At approximately 11:30, when she no longer heard the television, and the conversation and activity in the living room had ceased, Elsa believed Vincent and Appellant were asleep. As she continued to watch television, Elsa heard a loud noise, and Appellant immediately and excitedly ran into her bedroom with "big eyes," crying, and "talking at 100 miles per hour. Appellant told Elsa, "Mom, I don't know what happened. . . . The gun just went off. Dad is on the ground. . . . Please, Mom, kill me." As directed by Appellant, Elsa called 911.

By agreement, the voluntary statement of the accused was admitted in evidence at trial and was played for the jury. Appellant, who graduated from college in 2006, also testified at trial. He described his difficulties in falling asleep, and testified, "I sleepwalk a lot." Appellant stated he would wake up in places without knowing that he had walked or driven to the locations where he awakened, and also had awakened while cooking or having meals and would wonder how they had been prepared. Appellant did not remember what he did on the occasions when he was sleepwalking, but also stated that most of the time he remembers "tidbits" when he awakens.

On the night of his father's death, Appellant had not slept for four days. He recalled watching the horror movie, *Hellraiser*, on his computer in the kitchen that evening, and then "blanked out again." The next thing Appellant remembered was a rifle in his hand and seeing his father by a chair. Appellant ran and told his mother that his father didn't look good and instructed her to call the police. He also told his mother that he was sleepwalking and he "didn't mean to

2

do it." Appellant admitted that on a prior occasion he "went crazy" and hit his father with a pistol because his parents wanted him to go back to a mental hospital. He agreed that he was conscious and aware on that occasion. Appellant testified that he was not conscious when he shot his father, was not aware of what he was doing nor remembered what he had done, but had no doubt that he had shot his father because his mother was the only other person at home, and he knew she would not have shot him.

The rifle Appellant used was a Mosin-Nagant, and he acknowledged that he had previously owned a similar rifle which police had confiscated after he assaulted and pistol-whipped his mother. Appellants' parents had purchased this rifle at his request. The weapon found at the home was of a type that cannot be fired again without opening the bolt, ejecting the cartridge, and loading another cartridge in the chamber. Multiple cartridges and a casing were found in the home.

When asked to acknowledge whether he had previously assaulted anyone while sleepwalking, Appellant did not answer the question but replied that one of his psychiatrists, Dr. Robinson, had said this "would happen sooner or later." However, Appellant admitted that he did not recall ever complaining to Dr. Robinson between 2009-2015 of violent or non-violent episodes of sleepwalking, and declared, "I've said a lot of things to Dr. Robinson. Stuff he kept off record. He kept a lot off record." When he was evaluated at a facility for his mental health in 2014, Appellant did not recall ever complaining of sleepwalking.

Defense witnesses testified that Appellant had a long history of sleeping difficulties. Appellant's mother, Elsa, described Appellant's sleeping difficulties as occurring when he was near eight years old. She first remembered Appellant sleepwalking in junior high. On one

3

morning, she found the kitchen to be "a total mess," and when Appellant was in college, he would leave after 10:00 p.m., leave the garage door open, and come home late the following morning. On that occasion, when Elsa called Appellant's name, he did not respond and continued up the stairs. Elsa described another situation when she discovered Appellant outside and naked, and discovered he had urinated on the floor. On another occasion, she found Appellant walking naked and observed his defecate on the floor. Appellant was frequently in accidents after which he would awaken. Elsa described the many medications Appellant was prescribed to aid his sleep and mood. In support of her testimony that she had once seen Appellant sleepwalk, a cousin explained that she saw Appellant walking between rooms and he did not respond when she called his name but agreed that he did not attack her during this time.

One of Appellant's psychiatrists, Dr. Jacobson, testified that he had treated Appellant in 2014 and 2015 when Appellant was admitted into a treatment program. Dr. Jacobson explained that Appellant had experienced severe psychiatric problems for years, and had been diagnosed with attention deficit disorder with hyperactivity, bipolar disorder, major depressive disorder, and autistic spectrum disorder. He explained that Appellant suffers from "sleeping difficulties," but acknowledged that he did not know what sleep disorder Appellant might have. Appellant had not participated in a sleep study to identify or diagnose whether those difficulties did or did not include sleepwalking, and Dr. Jacobson agreed that none of Appellant's medical records mention an episode where he was sleepwalking nor contain any description of a violent sleepwalking episode. Dr. Jacobson described Appellant's sleep troubles as being an important issue.

## DISCUSSION

Appellant contends the trial court abused its discretion when it denied his request that the

4

jury be instructed on the lesser-included offense of manslaughter. Because manslaughter was not a valid, rational alternative to the charged offense of murder based on Appellant's sleepwalking evidence, and the State counters that trial court did not err or abuse its discretion when it refused to submit in its jury charge the requested manslaughter instruction.

### *Applicable Law*

To determine whether a defendant is entitled to an instruction on a lesser-included offense, we apply a two-part analysis. *Roy v. State*, 509 S.W.3d 315, 317 (Tex.Crim.App. 2017), *citing Goad v. State*, 354 S.W.3d 443, 446 (Tex.Crim.App. 2011). We first determine whether the offense in the requested instruction is a lesser-included offense of the charged offense. *Roy*, 509 S.W.3d at 317. If it is, we next determine whether a jury could, based on the admitted evidence, rationally find that if the defendant is guilty, he is guilty of only the lesser-included offense. *Id.* Because the Court of Criminal Appeals has previously held that manslaughter is a lesser-included offense of murder charged under § 19.02(b)(2), and because Appellant was charged with murder under that section, we move directly to the second part of the analysis. TEX.PENAL CODE ANN. § 19.02(b)(2); *Roy*, 509 S.W.3d at 317, *citing Cavazos v. State*, 382 S.W.3d 377, 384 (Tex.Crim.App. 2012).

"An instruction on a lesser-included offense is required only when there is some admitted evidence directly germane to that offense." *Roy*, 509 S.W.3d at 317; *Goad*, 354 S.W.3d at 446. We consider all admitted evidence without regard to the credibility or potential contradictions or conflicts of the evidence. *Roy*, 509 S.W.3d at 317. An instruction is required if more than a scintilla of evidence establishes "that the lesser-included offense is a valid, rational alternative to the charged offense." *Id*., *quoting Goad*, 354 S.W.3d at 446. Although little evidence is needed

5

to trigger an instruction, the relevant evidence must both affirmatively raise the lesser-included offense and rebut or negate an element of the greater offense. *Roy*, 509 S.W.3d at 317; *see also Cavazos*, 382 S.W.3d at 385.

*Lesser-Included Offense of Manslaughter Instruction*

A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX.PENAL CODE ANN. § 19.04(a)(West 2011). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX.PENAL CODE ANN. § 6.03(c)(West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id*.

To be entitled to the requested instruction on the lesser-included offense of manslaughter, Appellant must have presented more than a scintilla of evidence both raising manslaughter under Section 19.04 and rebutting or negating an element of the offense of murder under Section 19.02(b)(2). *Roy*, 509 S.W.3d at 317. To raise manslaughter, Appellant must have presented affirmative evidence that he recklessly caused the death of his father, that is, that he was aware of, but consciously disregarded, a substantial and unjustifiable risk that the result--a death--would occur. *See* TEX.PENAL CODE ANN. §§ 19.04(a), 6.03(c); *Roy*, 509 S.W.3d at 319. A defendant need not be aware at the moment the result occurs if he can show that he consciously disregarded the risk of the result and the result came from the same conduct. *Roy*, 509 S.W.3d at 319.

6

*Analysis*

## 1. Appellant's Contentions

Appellant asserts that courts have recognized sleepwalking as a "valid defense," and that a person is capable of reckless conduct while sleepwalking. At trial, Appellant testified that he wouldn't kill his father on purpose, and that after he shot his father, he told his mother he "didn't mean to do it." On appeal, Appellant contends this testimony negates or rebuts the element of intent for the greater offense of murder, but acknowledges that it does not on its own raise the lesser-included offense of manslaughter.

Appellant declares he was entitled to the lesser-included manslaughter instruction because there was some evidence that he disregarded the risk of causing a death while sleepwalking. He contends that his reckless conduct consisted of keeping a gun in his home while knowing he could "commit violence" while sleepwalking. In support of this assertion, Appellant directs us to his post-arrest statement to police, "It's gotten to the point where I'm scared that I don't know if I'm gonna kill somebody. I don't know what's going on." According to Appellant, this evidence shows that he consciously disregarded a substantial and unjustifiable risk that he would cause a death while sleepwalking and that the result "came from the same conduct."

Appellant asserts the trial evidence clearly established his reckless conduct because it showed he was not conscious at the moment he killed his father, he knew of his propensity to sleepwalk, he knew he had not slept for a period of four days prior to the shooting, he told police that he was afraid he would kill someone while sleepwalking, he had obtained a new rifle and kept it in his home after his previous rifle had been confiscated by police, and because his doctor had warned him that he would assault someone while sleepwalking. In concluding his arguments,

7

Appellant declares he was entitled to the requested instruction on manslaughter because a jury could have rationally found that he was guilty only of manslaughter, that his reckless conduct of keeping a gun in his home while knowing he could commit a violent act while sleepwalking was the same conduct that caused his father's death, and that he "was aware of, but consciously disregarded the substantial and unjustifiable risk of death under the circumstances."

**2.  The State's Response**

The State counters that manslaughter was not a valid alternative to the charged murder because, under the principles espoused by Texas law, Appellant's sleepwalking evidence did not serve to diminish his culpable mental state from intentional or knowing to reckless, and therefore was not, as required, directly germane to the offense of manslaughter.  Initially, the State reminds us of the rudimentary concept that criminal liability must be supported by proof of both *mens rea* (a culpable mental state) and *actus reus* (a criminal act), except in instances not applicable to this case, such as strict-liability offenses.  *See Alford v. State*, 866 S.W.2d 619, 622 (Tex.Crim.App. 1993).  The analysis for each component is separate and distinct.  *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App. 1993)(issue of voluntariness of one's conduct, or bodily movements, is separate from issue of one's mental state).

**A. *Mens Rea***

As to the *mens rea* component of criminal liability, the charge of murder in the indictment alleged, and the State was required to prove, that Appellant intended to cause his father's death by shooting him in the head with a firearm, or to cause serious bodily injury to his father by shooting him in the head with a firearm, or knew that shooting his father was reasonably certain to cause his death.  *See* TEX.PENAL CODE ANN. § 6.02(a)(except as otherwise provided, a person does not

8

commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires), § 6.03(b)(a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist; he acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result), § 19.02(b)(1), (2)(a person commits an offense if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual); *Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim.App. 1994). Evidence that a defendant has used a firearm in a deadly manner, overwhelmingly, if not conclusively, establishes that the defendant is in fact guilty of murder. *See Morrison v. State*, 480 S.W.3d 647, 665 (Tex.App.--El Paso 2015, no pet.), *citing Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App. 1993)(if deadly weapon is used in deadly manner, inference of intent to kill is almost conclusive); *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981)(where deadly weapon is fired at close range and death results, law presumes an intent to kill). Therefore, the State's evidence showing that Appellant shot his father in the head with a rifle was sufficient to satisfy the State's burden of proof as to the *mens rea* element of the offense of murder.

**B. *Actus Reus***

In Texas, the *actus reus* component of criminal liability is satisfied only if a person voluntarily engages in conduct, including an act, an omission, or possession. TEX.PENAL CODE ANN. § 6.01(a). For purposes of Section 6.01, "voluntariness" refers only to one's own physical body movements. *See Rogers v. State*, 105 S.W.3d 630, 638 (Tex.Crim.App. 2003). Physical

9

acts that are the product of unconsciousness are not voluntary. *Id*.; *Alford*, 866 S.W.2d at 624; *see also Febus v. State*, 542 S.W.3d 568, 574 (Tex.Crim.App. 2018)("If those physical movements are the non-volitional result of someone else's act, that movement is not voluntary.").

The State contends that Appellant's sleepwalking evidence, if believed by the jury, would act as a complete defense to prosecution and conviction by negating the required element of voluntary conduct, that is the *actus reus*. Consequently, the State argues that Appellant's sleepwalking evidence, if believed by the jury, would not have permitted the jury to rationally find that if Appellant was guilty, he was only guilty of manslaughter but, instead, would have entitled Appellant to an outright acquittal as the *actus reus* component of criminal liability would not have been satisfied. For this reason, the State asserts that Appellant's requested instruction on the lesser-included offense of manslaughter was not warranted, and the trial court's denial of the instruction constituted neither error nor an abuse of discretion. For the following reasons, we agree.

## 3. Automatism

Automatism is a broad term which, according to Professors LaFave and Scott, has been defined "as connoting the state of a person who, though capable of action, is not conscious of what he is doing. It is to be equated with unconsciousness, involuntary action [and] implies that there must be some attendant disturbance of conscious awareness. . . . [A]s is well known, automatic acts can occur during sleepwalking[.]" W. LaFave & A. Scott, *Substantive Criminal Law* § 9.4(a) (3rd Ed.)(October 2017 Update), *quoting* F. Whitlock, Criminal Responsibility and Mental Illness 119-20 (1963). Section 2.01 of the Model Penal Code specifies that a person is not guilty unless his liability is based on conduct that includes a voluntary act or the omission to perform an act of

which he is physically capable, and expressly provides that a bodily movement during unconsciousness or sleep, or one that is otherwise not a product of the effort or determination of the actor, either conscious or habitual, is not a voluntary act within the meaning of the Section. *See* MODEL PENAL CODE (U.L.A.) §§ 2.01(a), (b)(2), (4).   As Professors LaFave and Scott observe, "[I]t is undoubtedly more correct to say that such a person is not guilty of a crime because he has not engaged in an 'act' (defined as a voluntary bodily movement), and without an act there can be no crime[,]" and thus a successful automatism defensive issue will result "in outright acquittal."   W. LaFave & A. Scott, *Substantive Criminal Law* § 9.4(b)(3rd Ed.)(October 2017 Update).   [Citations omitted].

As noted above, although Section 6.01 of the Texas Penal Code is not as specific as the provisions of Section 2.01 of the Model Penal Code, the Texas Court of Criminal Appeals has recognized that physical acts which are the product of unconsciousness fall within the category of involuntary acts.   *See Alford*, 866 S.W.2d at 624.   In *Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex.Crim.App. 2002), the Court, in addressing an issue arising from the denial of a requested instruction on the defense of insanity, noted that persons who were unconscious or semi-conscious at the time of the alleged offense may argue either that they lacked the requisite *mens rea* necessary for criminal liability, or did not engage in a voluntary act.   *See* TEX.PENAL CODE ANN. §§ 6.02(a), 6.01(a).   In support of this statement, the *Mendenhall* Court referenced Professors LaFave and Scott's treatise, *Substantive Criminal Law*:

> A defense related to but different from the defense of insanity is that of unconsciousness, often referred to as automatism: one who engages in what would otherwise be criminal conduct is not guilty of a crime if he does so in a state of unconsciousness or semi-consciousness. Although this is sometimes explained on the ground that such a person could not have the requisite mental state for commission of the crime, *the better rationale is that the individual has not engaged*

11

*in a voluntary act.*

*Mendenhall*, 77 S.W.3d at 818, n4, *citing and quoting* W. LaFave & A. Scott, *Substantive Criminal Law* § 4.9 (1986). [Emphasis added]. The Second Court of Appeals subsequently observed that "Although automatism is sometimes explained in terms of lack of the requisite mental state for commission of the crime, more recently the court of criminal appeals noted that the better rationale was to consider the defense in terms of the individual not engaging in a 'voluntary act.'" *Nelson v. State*, 149 S.W.3d 206, 211 (Tex.App.--Fort Worth 2004, no pet.), *citing Mendenhall*, 77 S.W.3d at 818).[1]

The Court of Criminal Appeals reiterated its *Mendenhall* stance in *Ex parte Martinez*, 195 S.W.3d 713, 723 (Tex.Crim.App. 2006), once more noting that the defense of temporary insanity due to involuntary intoxication is not available to defendants who claim they were unconscious or semi-conscious at the time of the alleged offense because those defendants may argue either that they lacked for criminal liability purposes the *mens rea*, or did not engage in a voluntary act. More recently, the Court has continued to recognize that voluntariness of one's conduct, or bodily movements, is an issue separate from the issue of one's mental state. *Febus*, 548 S.W.3d at 574; *Whatley v. State*, 445 S.W.3d at 166 (Tex.Crim.App. 2014), *citing Adanandus*, 866 S.W.2d at 230.

Typically, the issue of whether a defendant has committed a voluntary act arises in situations in which evidence shows a defendant engaged in conduct, but the defendant denies that the physical conduct was voluntary. *Febus*, 548 S.W.3d at 574;. At trial, the State noted that Appellant was entitled to raise sleepwalking as a defensive issue, and Appellant argued that the

---

[1] The State properly notes that "sleepwalking" and "automatism" are more properly termed defensive issues or defensive theories as the Texas Penal Code does not identify either as a defense. *See* TEX.PENAL CODE ANN. § 2.03(a)(West 2011)("A defense to prosecution for an offense in this code is so labeled by the phrase: 'It is a defense to prosecution . . . .'").

12

State was required to prove beyond a reasonable doubt that Appellant was awake when he shot his father. Appellant testified that he watched a movie, "blanked out," and next remembered waking up with a rifle in his hand and seeing his father by a chair. He told his mother that he was sleepwalking and "didn't mean to do it," and knew that he had shot his father because the only other person in the house who was present was Appellant's mother, and Appellant conceded, "She wouldn't have done it." Appellant stated that he was not conscious when he shot his father, and neither was aware of what he did nor remembered what he did.

Appellant's sleepwalking evidence did not serve to diminish his *mens rea* from intentional or knowing to reckless, and even if believed by the jury, such evidence failed to establish reckless manslaughter as a valid, rational alternative to the intentional or knowing murder offense as indicted as to warrant the lesser-included instruction. *See Roy*, 509 S.W.3d at 317 (relevant evidence must affirmatively raise lesser-included offense and rebut or negate element of greater offense); *see also Cavazos*, 382 S.W.3d at 385. Rather than raising an issue of manslaughter based upon a reduction of the culpable mental state required for manslaughter, Appellant's sleepwalking evidence negated and precluded the *actus reas*, the requisite voluntary act. Appellant's automatism defensive theory, if believed by the jury, would have entitled Appellant to an acquittal. W. LaFave & A. Scott, *Substantive Criminal Law* § 9.4(a). Appellant did not request that the trial court include a voluntariness instruction in its charge to the jury. Moreover, to the extent that Appellant contends his automatism evidence had any bearing on the State's proof of the requisite culpable mental state, that evidence, if believed by the jury, served as a complete defense to conviction by negating *any* culpable mental state, and would not have entitled Appellant to a lesser-included instruction on manslaughter. *Id.*

13

**4. Same Conduct**

Appellant relies on *Schroeder v. State*, 123 S.W.3d 398 (Tex.Crim.App. 2003) and *Roy v. State*, 509 S.W.3d 315 (Tex.Crim.App. 2017) in support of his contention that he presented affirmative evidence that he recklessly caused the death of his father, that is that he was aware of but consciously disregarded a substantial and unjustifiable risk that the result--a death--would occur, and thus affirmatively raised the lesser-included offense of manslaughter. In *Schroeder*, the defendant presented evidence that he did not remember engaging in the charged conduct. *Schroeder*, 123 S.W.3d at 398, 399. The Court of Criminal Appeals rejected Schroeder's contention that this evidence alone was sufficient to raise the lesser-included offense of manslaughter because the culpable mental states for both murder and manslaughter relate to the result of the conduct, and concluded that no evidence would permit a jury to rationally find that at the time Schroeder fired the gun, he was aware of--but consciously disregarded--a substantial and unjustifiable risk that his wife would die as a result of his conduct. *Id*. Consequently, the Court held that such evidence did not raise the lesser-included offense of manslaughter, and concluded that the trial court did not err in failing to give the requested instruction on the lesser-included offense of manslaughter. *Id*. at 399, 400-01.

Fourteen years later, the Court clarified in *Roy* that a defendant need not be aware at the moment the result occurs if he can show that he consciously disregarded the risk of the result and the result came from the same conduct. *Roy*, 509 S.W.3d at 319. In that case, Roy testified that he was aware of the risks of driving while intoxicated and presented evidence, beyond his inability to remember, that he disregarded the risk of causing a death by driving while intoxicated. *Id*. He also testified that he was not conscious at the moment he caused the death of another. *Id.* The

14

Court determined that Roy was not required to be aware at the moment of death because he presented evidence at trial that he was aware of the risk of causing an accident by driving while intoxicated, which he consciously disregarded, and the death occurred as a result of the same conduct--Roy's act of driving while intoxicated. *Id.* For this reason, Roy was entitled to an instruction on the lesser-included offense of manslaughter because a jury could have rationally found that he was guilty only of manslaughter, and the jury could rationally find that Roy did not intend to harm the decedent and that his reckless behavior caused the decedent's death. *Id.*

Relying on *Roy*, Appellant contends that the risk which he consciously disregarded was the risk of causing a death while sleepwalking. In support of his contention that he was entitled to the lesser-included offense instruction, Appellant asserts in his brief that, beyond his inability to remember the conduct resulting in his father's death, the evidence showed Appellant knew of his propensity to sleepwalk, knew he had not slept for four days before the shooting, knew he had a propensity for behaving violently toward his father, told police he was afraid he would kill someone while sleepwalking, had obtained a new rifle and kept it in his home after police had previously confiscated a pistol that Appellant had used to strike his father, and that Appellant's doctor had warned him that he would assault someone while sleepwalking.

The facts of this case dictate a different result than that in *Roy*. Of Appellant's itemized evidence, only Appellant's possession of the rifle within the home constitutes conduct on his part. However, that conduct, even if deemed reckless, is not the same conduct that caused the victim's death. The victim's death was caused by Appellant shooting him in the head with the rifle. Consequently, Appellant's alleged reckless conduct (keeping a rifle in the home) is not the same as the conduct that caused his father's death (using a rifle to shoot his father in the head), nor was

15

the alleged reckless conduct included within the facts necessary to prove the conduct and offense charged in the indictment, murder. *See Irving v. State*, 176 S.W.3d 842, 845-46 (Tex.Crim.App. 2005); *Hayward v. State*, 158 S.W.3d 476, 478-80 (Tex.Crim.App. 2005)(no lesser-included offense instruction required where conduct establishing lesser offense differs from, and is not included within, the conduct charged in the indictment).

For the foregoing reasons, we conclude the trial court did not err in refusing Appellant's instruction on the lesser-included offense of manslaughter. Appellant's sole issue on appeal is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

July 31, 2018

SUSAN LARSEN, Senior Judge

Before Rodriguez, Palafox, JJ., and Larsen, J. (Senior Judge),
Larsen, J. (Senior Judge), sitting by assignment

(Do Not Publish)

16