

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00124-CR

_____

TIMOTHY JOEL CARPENTER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the County Court at Law
Hood County, Texas
Trial Court No. 51080

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant Timothy Joel Carpenter appeals his conviction for misdemeanor driving while intoxicated. The jury assessed his punishment as confinement in the Hood County Jail for thirty days and recommended that the sentence be suspended. The trial court followed the jury's recommendation, suspended Appellant's sentence, and placed him on community supervision for a period of one year.

Appellant challenges the sufficiency of the evidence to support the intoxication element. Appellant attributes his inability to perform the field sobriety tests to a physical disability and downplays the remaining evidence of intoxication. In essence, Appellant tries to convince us that the jury got it wrong. The record, however, contains probative evidence from which the jury could reasonably infer that Appellant was intoxicated. Because this is the sole element that Appellant challenges, our sufficiency review is limited to assuring that the record contains such evidence.

We modify the caption on the judgment to delete any unnecessary confusion that its wording may cause, and we affirm the judgment as modified.

### II. Factual background

The record in this case consists of the testimony of the DPS trooper who stopped and arrested Appellant, one page of the report that the trooper prepared after Appellant's arrest, and a fifteen-minute video of the stop from the trooper's body camera.

The testifying officer had twenty-four years' experience as a DPS trooper. He had made 400 to 500 arrests for the offense of driving while intoxicated and had conducted a similar number of investigations for the offense for which he made no arrest.

On a one-hundred-plus-degree June afternoon, the trooper noticed Appellant's vehicle approaching in his rearview mirror. A check of Appellant's speed showed that he was driving 20 miles per hour over the posted 40 mile-per-hour speed limit. The trooper pulled to the side of the road, let Appellant pass, and then initiated a traffic stop. Appellant immediately pulled over and remained cooperative and continued to answer the questions that he was asked throughout his encounter with the trooper. Appellant, a mechanic, claimed that he was speeding to remedy a mechanical problem that was causing the vehicle to overheat.

After the trooper approached Appellant's vehicle, he noticed an open container in the console. The container was a Four Loko alcoholic beverage. The label on the 24-ounce Four Loko container reflected that the beverage contained 12% alcohol— while beer usually contains around 4.5% alcohol. The container was three-quarters empty. The container was cold, which indicated to the trooper that Appellant had recently purchased it.

In the trooper's words, Appellant said that "it was a drink that he had been drinking on." The video generated by the trooper's body camera demonstrates that when the trooper inquired about the container, Appellant said, "I was drinking that

3

earlier." Appellant stated that he had not even finished the container yet and that it was all that he had consumed. He then stated that he "wasn't going to even drink that" but that he had become frustrated while attempting to diagnose the mechanical problem with the vehicle he was driving.

After hearing Appellant's acknowledgement of his consumption of the Four Loko, the trooper administered a horizontal gaze nystagmus (HGN) test. The trooper described the basis for the test as follows:

> Nystagmus is a -- it's referred to as an involuntary jerking of the eyeball, and horizontal is because we move -- it's called a stimulus; you can use your finger or pen -- you move that side to side, and without nystagmus your eye will roll or move smoothly from one side to the next like a ball bearing on a track; it will move smoothly. The introduction of alcohol will create, and some other drugs, will create nystagmus, which causes a jerking movement as you're moving the stimulus from side to side. The person who has nystagmus can't see it, doesn't even notice it, but it's the eye not being able to focus on that stimulus or my finger as it moves side to side and it skips, it jerks back and forth, and again, this is created by the introduction of some drugs and alcohol into the system.

Without objection, the trooper testified that "when you see this nystagmus in the way that we're looking for [it,] it's considered to be 88 percent accurate in determining intoxication" of a level above .08 blood-alcohol content.

The HGN test examines three indicators per eye, for a total of six clues of intoxication. The trooper detected a total of four clues of intoxication but was unable to detect the remaining two clues because Appellant failed to follow instructions. A report the trooper generated mistakenly stated that Appellant had demonstrated six clues. The trooper performed the HGN test twice during the fifteen-minute stop that

4

preceded Appellant's arrest. The second test produced the same result as the first. According to the trooper, physical disabilities do not affect a person's performance during the HGN test. He also confirmed that a stroke would not affect a person's performance during the HGN test.

The trooper also attempted to perform other field sobriety tests, such as the one-leg-stand and walk-and-turn tests. Appellant did not properly perform these tests, but the trooper discounted these results as clues of intoxication because Appellant claimed that he had been burned, had back and leg problems, had arthritis, and had suffered strokes. The trooper also did not mention in his report that Appellant did not follow the instructions that he was given while taking these other tests because the trooper did not know how much of the failure to follow the instructions was related to Appellant's "physical aspects" and how much was related to alcohol.

The trooper also performed two tests with a portable breath tester, the results of which were not admissible. However, Appellant's counsel asked the trooper whether he took those tests into consideration in arresting Appellant, and the trooper stated that he had. Appellant's counsel spent a considerable amount of time during cross-examination questioning the trooper on whether he had waited long enough between the two portable breath tests for the second test to be valid and eventually solicited an answer from the trooper that his experience indicated that the results of

the second test were reliable even if the test was performed before the end of the recommended fifteen- or twenty-minute waiting period.

Appellant's counsel also cross-examined the trooper regarding whether he had administered other types of field sobriety tests. The trooper said that he did not administer nonstandard tests and had not been trained on them because they did not meet the National Highway Traffic Safety Administration's standards.

The trooper acknowledged that his report did not mention that Appellant had glassy, bloodshot eyes. The report also did not mention anything about slurred speech.

Appellant agreed to take a breath test at the jail. However, there was a problem with the machine used to perform the test. The trooper attempted to call a technical supervisor for assistance but was unable to reach him. No results of tests conducted at the jail were offered into evidence, and the trooper acknowledged that the evidence of Appellant's intoxication consisted solely of his observations on the side of the road.

The jury also heard, without objection, the State ask the trooper, "And so based on all the evidence that we saw on the video[,] what was your belief at that point?" The trooper responded, "I believed that he was intoxicated."

After hearing the above evidence, the jury found Appellant guilty of driving while intoxicated. This appeal followed.

6

### III.  Sufficient evidence supports the intoxication element

In his sole issue, Appellant argues that the evidence is insufficient to support his conviction for driving while intoxicated.  Specifically, Appellant argues that the State did not prove the element of intoxication because the evidence of intoxication consisted only of four clues on the HGN test.

### A.  Standard of review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV.  In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

**B. The definition of intoxicated and the factors that are relevant to this appeal that are probative of intoxication**

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a).[1] The penal code defines "intoxicated" as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body; or (B) having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2).

The alternate definitions of intoxicated provide two methods of proving a person is intoxicated—the impairment theory and the per se theory. *Perez v. State*, 495 S.W.3d 374, 382 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "The first definition [subsection A] is often referred to as the 'impairment' theory of intoxication, and the second definition [subsection B] is often referred to as the 'per se' theory of intoxication." *Ahn v. State*, No. 02-17-00004-CR, 2017 WL 6047670, at *4 (Tex. App.—Fort Worth Dec. 7, 2017, no pet.) (mem. op., not designated for publication). They "are not distinct offenses, distinct elements of the offense, or even alternative means of committing the offense, but are instead alternative means by which the State may prove intoxication." *Id.* In this case, the State offered no

---

[1]Appellant describes the focus of his sufficiency challenge as follows: "Because Appellant does not argue that he operated a vehicle in a public place, Appellant's discussion and argument will focus on the fact [that] the evidence was insufficient to prove Appellant was intoxicated." Based on the substance of Appellant's arguments, we construe this statement to mean that Appellant concedes that he was operating a motor vehicle in a public place and therefore challenges only the sufficiency of the evidence showing that he was intoxicated.

credible evidence of Appellant's blood-alcohol content; it relied solely on proof that Appellant was impaired, and the jury was charged only on the impairment theory.

In determining whether sufficient evidence supports a finding of intoxication, appellate courts rely on a number of factors that are present in this case and do not require the State to anticipate and rebut a claim that an impairment resulted from a physical disability:

- It is axiomatic that one factor that a jury may consider in determining whether a person was intoxicated is the consumption of alcohol. For example,

> The jury heard that appellant admitted to having consumed at least four beers on the night of the accident. Thus, there is some proof that alcohol was introduced into appellant's body. The jury could have reasonably determined that the accident occurred because appellant lost the normal use of his faculties by reason of that introduction.

*Navarro v. State*, 469 S.W.3d 687, 695 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (op. on reh'g).

- Generally, "an officer's opinion testimony based upon experience and the observed facts that a defendant was intoxicated is sufficient to establish the element of intoxication." *Ramirez v. State*, No. 02-09-00285-CR, 2010 WL 4676987, at *5 (Tex. App.—Fort Worth Nov. 18, 2010, no pet.) (mem op., not designated for publication) (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979)).

9

But as this court has previously noted, there must be supporting facts to sustain the officer's opinion. *See id.*

- "A defendant's poor performance on the standardized field sobriety tests is further evidence of intoxication." *Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also McIntyre v. State*, No. 02-17-00167-CR, 2018 WL 1866083, at *3 (Tex. App.—Fort Worth Apr. 19, 2018, no pet.) (mem. op., not designated for publication) ("A jury may also consider a defendant's poor performance on standardized field sobriety tests as evidence of intoxication."); *Finley v. State*, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ("Texas courts consistently uphold DWI convictions based upon the opinion testimony of police officers who observed the defendant's unsatisfactory performance in field sobriety tests.").

There is no question that an HGN test is considered both reliable and probative of intoxication. The court of criminal appeals has held that the HGN test is based on scientific theory and is admissible under Texas Rule of Evidence 702 when properly administered by a qualified officer. *See Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994); *Horton v. State*, No. 02-09-00158-CR, 2010 WL 3433776, at *2–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication). One limitation on the use of HGN test results is that an

officer may not testify that an HGN test's findings correlate to a specific blood-alcohol content. *See Youens v. State*, 988 S.W.2d 404, 406 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("In other words, an officer trained in administering the HGN test may give his opinion that a suspect is under the influence of alcohol[] but may not testify to that suspect's exact blood[-]alcohol content."). In this case, Appellant does not challenge the qualifications of the trooper to administer the HGN test or the manner in which he administered it.

- Finally, it is not the State's burden to establish what a defendant's normal capabilities are as a contrast to what it contends is an impaired state:

> Appellant argues that the evidence is insufficient because the State failed to prove what appellant's normal use of his mental and physical faculties were, and therefore, it did not prove that he had lost the normal use of his faculties. Appellant has not cited any authority in support of this proposition, nor are we aware of any. To the contrary, several courts of appeals, including this court, have addressed this issue and held that the State does not have to present evidence of a defendant's normal abilities.

*Ramirez v. State*, No. 01-17-00568-CR, 2018 WL 3353052, at *3 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (citing *Fogle v. State*, 988 S.W.2d 891, 894 (Tex. App.—Fort Worth 1999, pet. ref'd); *Reagan v. State*, 968 S.W.2d 571, 572 (Tex. App.—Texarkana 1998, pet. ref'd); *Massie v. State*, 744 S.W.2d 314, 316 (Tex. App.—Dallas 1988, pet. ref'd)).

11

## C. The evidence supports the jury's finding that Appellant was intoxicated

The record in this case is not overwhelming. Apparently, due to an equipment malfunction and the absence of a witness, the State lacked the scientific evidence necessary to establish Appellant's blood-alcohol content and thus to offer proof to support a per se theory of intoxication. But that deficiency still left open the avenue of proving intoxication under an impairment theory. The record before us contains sufficient evidence to support a finding of intoxication under that theory.

To begin with, Appellant admitted, and the open container in the vehicle demonstrated, that he had recently consumed alcohol. Based on the alcohol content of the drink, the amount consumed from the container, and the cool temperature of the can, Appellant had recently consumed an amount of alcohol roughly equivalent to four beers. Thus, the record contains evidence of the recent and substantial consumption of alcohol by Appellant.

With this evidence before the jury, the question devolves into whether that alcohol had produced an intoxicating effect on him. The record contains that evidence. For instance, Appellant began his encounter with the trooper by passing his marked patrol vehicle going twenty miles per hour over the posted speed limit. A jury could infer that this is evidence of a person "not having the normal use of mental or physical faculties." *See* Tex. Penal Code Ann. § 49.01(2).

12

The trooper's testimony provides evidence of intoxication. Poor performance on field sobriety tests in general, and the HGN test in particular, is probative of intoxication. Here, the trooper conducted not one but two HGN tests on Appellant. Appellant does not challenge the trooper's competence or the manner in which he administered the test. The lack of any challenges is understandable considering the trooper's decades of experience during which he had conducted almost one thousand DWI investigations. The results of the HGN tests led the trooper to conclude that Appellant was intoxicated. The only criticism raised to the HGN test results is that the trooper noted in his report that he had found six clues of intoxication when he had found only four. During his testimony, he quickly acknowledged his mistake and indicated that the inability to determine the remaining clues resulted from Appellant's failure to follow the trooper's instructions. *See generally Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." (citing *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007))).

Further, Appellant's counsel's cross-examination of the trooper provided support that the record might not otherwise have had. Defense counsel specifically asked the trooper if he had considered the results of the two portable breath tests that he had administered. He said that he did. Though counsel's purpose was apparently to undermine the trooper's reliance on the results of the tests because he had not

13

waited long enough to administer the second test, the trooper's rejoinder was an explanation for why he felt that the second test was valid. Thus, even though the portable breath tests did not provide Appellant's blood-alcohol content for the jury to consider, it did provide an additional basis for the trooper's opinion that Appellant was intoxicated.

And the trooper's opinion provides more support for the jury's determination of intoxication. The trooper did not give an invalid bare opinion. Instead, he relied on the results of the tests that he had conducted—the HGN test and the portable breath test—which were captured on his body camera and shown to the jury. Further, Appellant's counsel raised no objection when the trooper stated his opinion that Appellant was intoxicated. Thus, it constitutes additional evidence supporting the jury's determination.

### D. Appellant's argument turns a blind eye to the standard of review regarding whether the record contains evidence from which the jury could reasonably infer that he was intoxicated

Appellant inventories a host of cases examining records in which the defendants claimed that they suffered from a physical disability that accounted for behavior that mimicked intoxication.[2] In his argument, Appellant extracts factors highlighted in those cases and notes the absence of those factors in his behavior.

---

[2]*See Williams v. State*, 307 S.W.3d 862 (Tex. App.—Fort Worth 2010, no pet.); *Burkett v. State*, 179 S.W.3d 18 (Tex. App.—San Antonio 2005, no pet.); *Mitchell v. State*, 2004 WL 1277907 (Tex. App.—Fort Worth June 10, 2004, no pet.) (mem. op., not designated for publication); *Fogle*, 988 S.W.2d at 892, 894.

Appellant appears to use this approach to frame an argument that the calculus in this case dictates a finding that his disabilities, rather than his consumption of alcohol, produced the behavior that the trooper attributed to intoxication. Appellant's analysis establishes that no two cases are the same but sidesteps the question of whether the inference of intoxication drawn by the jury in this case was reasonable based on the factors that were present.

Some of the conclusions reached by Appellant are at odds with the record. For example, Appellant emphasizes that there was no evidence of alcohol on his breath. But there was no reason to infer that Appellant had recently drunk alcohol from its scent on his breath because he admitted that he had recently consumed the Four Loko. Next, Appellant claims that he made no admission "indicating excessive alcohol consumption" but then cites a case in which this court relied on evidence that an appellant had consumed three or four beers. *See Williams*, 307 S.W.3d at 863. The record in this case demonstrates the same amount of alcohol consumption by Appellant. Then, Appellant claims that his driving did not "evince" intoxication. Yet the record shows that Appellant passed a marked DPS vehicle going 20 miles per hour over the posted 40 mile-per-hour speed limit. Appellant's explanation is that his speed was an attempt to remedy a mechanical problem with the vehicle, but a jury could equally infer that Appellant's conduct was reckless and was induced by alcohol and that his failure to observe the law-enforcement vehicle that he was bearing down on was induced by the same influence.

Appellant also characterizes the record as establishing that he had no unsteady gait or slurred speech from alcohol consumption and that one explanation for his failure to pass the one-leg-stand and walk-and-turn tests was his physical disabilities. Appellant then states that the trooper "attributed Appellant's inability to walk to Appellant's physical disabilities" and "testified Appellant's inability to perform the two tests was due to Appellant's medical condition." Instead, the trooper said that he did not list the failure to pass the tests on his report because he did not know how much of the failure to follow the instructions was related to Appellant's "physical aspects" and how much was related to alcohol. The jury, like the trooper, might have given Appellant the benefit of the doubt because of his disability claims, but that does not erase the other evidence in the record that supports a finding of intoxication.

Appellant emphasizes that the courts in the cases he cites relied on evidence of bloodshot eyes or a refusal to take a blood or breath test. There was no evidence of those factors in this case, but that does not cancel out the evidence of intoxication that does exist.

Finally, Appellant notes that in certain cases, appellants claimed only at trial that they suffered from a disability and did not mention the impairments when arrested. Appellant claims he disclosed his disabilities to the trooper. He certainly took the trooper's lead when initially asked about whether he had a bad leg, and the trooper gave him the benefit of the doubt for his inability to perform the field sobriety tests requiring the use of his legs. But whatever support these facts lend to a

16

conclusion that Appellant was not intoxicated does not abrogate the existence of those facts indicating that he was.

At bottom, Appellant's argument is a variation of the theme that the State must present proof of a defendant's unimpaired state to establish that his impaired state resulted from alcohol consumption. The State does not bear this burden. Nor was the jury bound to accept Appellant's theory of the case when the record contained evidence supporting the State's theory.

Accordingly, we overrule Appellant's sole issue.

## IV. Modification of the judgment

We do find one error in the trial court's judgment. The judgment is captioned "JUDGMENT ON VERDICT OF GUILTY PUNISHMENT FIXED BY COURT." The judgment recites, and the record establishes, that the jury assessed Appellant's punishment at thirty days in jail and recommended that the sentence be suspended. To make the record speak clearly and to eliminate the possibility of confusion, we modify the judgment by deleting the words following "guilty" so that the judgment is captioned "JUDGMENT ON VERDICT OF GUILTY." *See Nelson v. State*, 149 S.W.3d 206, 213 (Tex. App.—Fort Worth 2004, no pet.) (stating that appellate court may correct and reform a trial court judgment to make the judgment congruent with the record).

## V. Conclusion

Having overruled Appellant's sole issue but having modified the caption of the judgment, the judgment of the trial court is affirmed as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 8, 2019